# EXHIBIT FIVE
## U S B C - Southern District of New York
## Case No. 05-17930
### Ex Parte Order(I) Scheduling Hearing

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------------x

In re:                                              :    **Chapter 11**
                                                    :
**NORTHWEST AIRLINES CORPORATION, et al.,**         :    **Case No. 05-17930 (ALG)**
                                                    :
                                  **Debtors.**      :    **Jointly Administered**

----------------------------------------------------------------------x

**EX PARTE ORDER (I) SCHEDULING HEARING TO CONSIDER APPROVAL OF
DISCLOSURE STATEMENT AND APPROVING NOTICE PROCEDURES RELATING
THERETO; (II) SCHEDULING HEARING ON PLAN CONFIRMATION AND APPROVING
NOTICE PROCEDURES RELATING THERETO; AND (III) ESTABLISHING DEADLINE
TO FILE MOTION TO ESTIMATE CLAIMS FOR RIGHTS OFFERING PURPOSES**

Northwest Airlines Corporation ("NWA Corp.") and certain of its direct and

indirect subsidiaries, as debtors and debtors in possession (collectively, the "Debtors")[1], having

filed with this Court a Disclosure Statement With Respect to Debtors' First Amended Joint and

Consolidated Plan of Reorganization Under Chapter 11 of the Bankruptcy Code, dated as of

February 15, 2007, (as it may be supplemented or amended, the "Disclosure Statement") and

Debtors' First Amended Joint and Consolidated Plan of Reorganization Under Chapter 11 of the

Bankruptcy Code, annexed as Exhibit A thereto, (as it may be supplemented or amended, the

"Plan"); and upon the ex parte portion of the Debtors' motion dated February 15, 2007 (the

---

1 Specifically, in addition to NWA Corp., the Northwest Debtors consist of: NWA Fuel Services
Corporation ("NFS"), Northwest Airlines Holdings Corporation ("Holdings"), NWA Inc. ("NWA Inc."),
Northwest Aerospace Training Corp. ("NATCO"), Northwest Airlines, Inc. ("Northwest Airlines"), MLT
Inc. ("MLT"), Compass Airlines, Inc. f/k/a Northwest Airlines Cargo, Inc. ("Compass"), NWA Retail
Sales Inc. ("NWA Retail"), Montana Enterprises, Inc. ("Montana"), NW Red Baron LLC ("Red Baron"),
Aircraft Foreign Sales, Inc. ("Foreign Sales"),  NWA Worldclub, Inc. ("WorldClub") and NWA Aircraft
Finance, Inc. ("Aircraft Finance").

"Motion")[2] seeking, inter alia, an order (i) scheduling a hearing to consider approval of the Disclosure Statement with respect to the Debtors' Plan and approving notice procedures relating thereto; (ii) scheduling a hearing to consider confirmation of the Debtors' Plan and approving notice procedures relating thereto; and (iii) establishing a deadline for motions to estimate claims for purposes of rights offering participation; and after due deliberation and sufficient cause having been shown for the ex-parte relief requested in the Motion and provided for herein;

IT IS HEREBY ORDERED that:

I.    Hearing on the Disclosure Statement

1.    The hearing before this Court to consider approval of the Disclosure Statement shall be held on March 26, 2007 at 11:00 a.m. (prevailing Eastern Time), or as soon thereafter as counsel may be heard (the "Disclosure Statement Hearing").

2.    March 19, 2007 at 4:00 p.m. (prevailing Eastern Time) is fixed as the date by which objections or proposed modifications to the Disclosure Statement must be filed. Such objections or proposed modifications must be made in writing and be electronically filed with the Court in accordance with the requirements as provided in paragraph 4 below and served upon the following parties (the "Notice Parties"):

(i)    the Clerk of the Court, One Bowling Green, New York, New York 10004-1408;

(ii)    Cadwalader, Wickersham & Taft LLP, One World Financial Center, New York, New York 10281, Attention: Bruce R. Zirinsky, Esq. (Facsimile: 212-504-6666), counsel to the Debtors;

(iii)    Otterbourg, Steindler, Houston & Rosen, P.C., 230 Park Avenue, New York, New York 10169, Attention: Scott L. Hazan, Esq. (Facsimile: 212-682-6104), counsel to the Official Committee of Unsecured Creditors;

---

2 Capitalized terms not defined herein shall have the meaning ascribed to them in the Motion.

(iv)    Jenner & Block LLP, One IBM Plaza, Chicago, IL 60611-7603, Attention: Catherine L. Steege, Esq. (Facsimile: (312) 840-7352), counsel to the Official Committee of Retired Employees;

(v)    Latham & Watkins LLP, Sears Tower, Suite 5800, 223 South Wacker Drive, Chicago, IL 60606, Attention: Joe Athanas, Esq. (Facsimile: 312-993-9796), counsel to the Debtors' postpetition lenders; and

(vi)    the Office of the United States Trustee, 33 Whitehall Street, 21st Floor, New York, New York 10004, Attention: Brian Masumoto, Esq.

so that they are actually received on or before 4:00 p.m. (prevailing Eastern Time) on March 19, 2007.

3.    Objections or proposed modifications, if any, to the Disclosure Statement must be timely filed and served, must state the name and address of the objecting party and the nature of the claim or interest of such party and must set forth, in writing, a concise statement of the basis for such objection or proposed modification, including, if applicable: the specific page number of the Disclosure Statement to which the objection refers, the specific language proposed to be deleted, if a deletion is sought, a draft of the precise language that the objecting party proposes be added or substituted and the reasons and statutory or other authority therefor.

4.    Objections or proposed modifications to the Disclosure Statement that do not comply with the foregoing, or that are not timely filed and served, will not be considered and shall be deemed waived and/or overruled.

II.    <u>Hearing on the Confirmation of the Plan</u>

5.    The Confirmation Hearing before this Court to consider confirmation of the Debtors' Plan shall be held on May 16, 2007, at 11:00 a.m. (prevailing Eastern Time), or as soon thereafter as counsel may be heard.

6.    Objections, if any, to confirmation of the Plan shall be in writing, and shall state the name and address of the objecting party and the nature of the claim or interest of such

party, provide a concise statement of the basis for such objection or proposed modification, including, if applicable: the specific page number of the Plan to which the objection refers, the specific language proposed to be deleted, if a deletion is sought, a draft of the precise language that the objecting party proposes be added or substituted, and the reasons and statutory or other authority therefor, and be filed, together with proof of service, with the Court and served so that they are actually received no later than 4:00 p.m., prevailing Eastern Time, on May 7, 2007, by the Notice Parties.

       7.     Objections, if any, to confirmation of the Plan that do not comply with the foregoing, or that are not timely filed and served, will not be considered and shall be deemed waived and/or overruled.

III.    Notice of Hearings

       8.     The Debtors shall serve notice of the Disclosure Statement hearing and initial notice of the Confirmation Hearing in a form substantially similar to that annexed hereto as Exhibit "A" (the "Disclosure Statement and Confirmation Hearing Notice"), by first class mail or email on or before February 22, 2007 to (i) the parties in interest listed on the Master Service List (as defined in this Court's Order establishing notice procedures and a master service list, dated September 15, 2005), (ii) the Securities and Exchange Commission (the "SEC"); (iii) the Internal Revenue Service (the "IRS"); (iv) the United States Department of Justice (the "DOJ"); (v) the Pension Benefit Guaranty Corporation (the "PBGC"); (vi) the Office of the United States Trustee; (vii) all creditors scheduled by the Debtors; (viii) all creditors who have filed claims against the estates; (ix) all known parties to executory contracts; and (x) the nominees and registered holders of the Debtors' debt and equity securities.  The Disclosure Statement and Confirmation Hearing Notice will include information on how parties may request a copy of the Disclosure Statement, the Plan and/or the Motion.

9.      Pursuant to Bankruptcy Rule 3017(a), the Debtors will mail copies of the Plan and the Disclosure Statement with the Disclosure Statement and Confirmation Hearing Notice to the Debtors, the Creditors Committee, the Retiree Committee, the SEC and any party in interest who requests in writing a copy of the Plan or the Disclosure Statement.  The Debtors will also mail or e-mail copies of the Motion to such parties and to parties on the Master Service List.

10.     The Debtors will provide a copy of the Disclosure Statement, the Plan, or this Motion to any party in interest who specifically requests a copy of same in the manner specified in the Scheduling Order and the Disclosure Statement and Confirmation Hearing Notice.  Further, a copy of the Disclosure Statement and the Plan will be on file with the Office of the Clerk of the Court for review during normal business hours and available through the internet website of the Bankruptcy Court of the Southern District of New York at http://www.nysb.uscourts.gov/.  Any party in interest not able to obtain a copy of the Disclosure Statement and Plan through the Court's website may obtain a copy through the Debtors' website at http://www.nwa-restructuring.com/ or by calling the Debtors' Balloting Agent, Bankruptcy Services LLC at (866) 715-0768.

11.     Service of the Disclosure Statement and Confirmation Hearing Notice upon the parties and in the time and manner set forth above shall be adequate and sufficient notice of the Disclosure Statement Hearing and no further notice of the Disclosure Statement Hearing shall be necessary or required.

12.     The Debtors will serve notice of the Confirmation Hearing on all creditors and parties in interest by service of the Disclosure Statement and Confirmation Hearing Notice as set forth above, supplemented as set forth below.

13.    The Debtors will publish notice of the hearing on confirmation of the Plan and the proposed bar date set in the Plan for administrative expense claims (the "Confirmation Hearing Notice," attached hereto as Exhibit "B") in be published in The Wall Street Journal (National Edition), The New York Times and USA Today on or before April 6, 2007.  The Debtors will publish the Confirmation Hearing Notice electronically on their website at www.nwa-restructuring.com.

14.    In addition to the notice set forth above, the Debtors will serve all known creditors notice of the Confirmation Hearing as part of the Solicitation Packages, which will include service of the Confirmation Hearing Notice, or through service of a Notice of Non-Voting Status, which shall include notification of the time fixed for the Confirmation Hearing and objections to confirmation of the Plan.

15.    Notice of the Confirmation Hearing in the time and manner set forth above shall be adequate and sufficient notification of the same to all creditors and other parties in interest, and no further notice shall be necessary or required.

16.    The Disclosure Statement Hearing and/or Confirmation Hearing may be adjourned from time to time by the Court or, with respect to the applicable Debtor's chapter 11 case, by one or more of the Debtors, without further notice to holders of claims, holders of equity interests or parties in interest other than by announcement in open court, or by notation on the official public docket of the Court of the date of the Disclosure Statement Hearing or Confirmation Hearing, respectively.

IV.    Estimation of Claims for Purposes of Rights Offering

17.    As more fully described in the Disclosure Statement and Confirmation Hearing Notice that will be served as set forth above, if any creditor seeks to challenge the

disallowance of its claim for Rights Offering purposes in accordance with the Rights Participation Procedures more fully described in Section III of the Motion, except and otherwise agreed between the Debtors and such creditor, such creditor must serve on the Debtors and file with the Court (with a copy to chambers) a motion for an order temporarily allowing such claim for purposes of participating in the Rights Offering on or before the Rights Offering Estimation Deadline, which is (i) March 16, 2007; or (ii) with respect to those claims described in subsection (e) of paragraph 79 of the Motion, five (5) business days after the Debtors file an objection to such creditor's claim, in the event the Debtors file such objection in advance of the Voting Record Date. Such creditor is not entitled to participate in the Rights Offering unless the creditor's claim is temporarily allowed by the Court for Rights Offering purposes, after notice and a hearing, or as otherwise agreed between the parties.

18.     The Debtors will serve parties on Exhibit D-1 to the Motion with a notice, substantially in the form set forth in Exhibit D-2 to the Motion, stating that their claim is deemed disallowed for Rights Offering purposes and notifying such parties of the Rights Offering Estimation Deadline.

19.     The Debtors, in consultation with the Creditors Committee, may resolve disputes over any creditor's right to participate in the Rights Offering without the necessity for further Order or approval from the Bankruptcy Court.

20.    The requirement set forth in Rule 9013-l(b) of the Local Bankruptcy

Rules that any motion filed shall have an accompanying memorandum of law is hereby waived.

Dated:    New York, New York
          February 15, 2007


                              /s/ Allan L. Gropper
                              UNITED STATES BANKRUPTCY JUDGE

Disclosure Statement Hearing Date and Time: _____, 2007 at 11:00 a.m.
Disclosure Statement Objection Deadline: _____, 2007 at 4:00 p.m.

Confirmation Hearing Date and Time: _____, 2007 at 11:00 a.m.
Confirmation Objection Deadline: _____, 2007 at 4:00 p.m.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x   Chapter 11

In re:                                                       :   Case No. 05-17930 (ALG)

                                                             :   Jointly Administered
NORTHWEST AIRLINES CORPORATION,
NWA FUEL SERVICES CORPORATION,
NORTHWEST AIRLINES HOLDINGS CORPORATION,                     :
NWA INC.,
NORTHWEST AEROSPACE TRAINING CORPORATION,                    :
NORTHWEST AIRLINES, INC.,
NWA AIRCRAFT FINANCE, INC.,                                  :
MLT INC.,
COMPASS AIRLINES, INC. F/K/A NORTHWEST AIRLINES CARGO, INC., :
NWA RETAIL SALES INC.,
MONTANA ENTERPRISES, INC.,                                   :
AIRCRAFT FOREIGN SALES, INC.,
NW RED BARON LLC, AND                                        :
NWA WORLDCLUB, INC.

                                        Debtors.             :

------------------------------------------------------------ x

NOTICE OF (I) HEARING TO CONSIDER APPROVAL OF DISCLOSURE STATEMENT;
(II) HEARING ON CONFIRMATION OF DEBTORS' FIRST AMENDED JOINT AND
CONSOLIDATED PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE; AND
(III) LAST DATE TO FILE MOTION FOR ESTIMATION OF CLAIMS FOR RIGHTS OFFERING PURPOSES

TO ALL PERSONS AND ENTITIES WITH CLAIMS AGAINST THE ABOVE-CAPTIONED DEBTORS AND
DEBTORS IN POSSESSION:

          PLEASE TAKE NOTICE that on February 15, 2007, Northwest Airlines Corporation ("NWA Corp.") and
the above-captioned debtors, as debtors and debtors in possession (collectively, the "Debtors"), filed a Disclosure Statement With
Respect to the Debtors' First Amended Joint and Consolidated Plan of Reorganization Under Chapter 11 of the Bankruptcy Code
(as may be amended, the "Disclosure Statement") and the Debtors' First Amended Joint and Consolidated Plan of Reorganization
Under Chapter 11 of the Bankruptcy Code (as may be further amended, the "Plan"), pursuant to section 1125 of title 11 of the
United States Code (the "Bankruptcy Code"). On February 15, 2007, the Debtors filed a motion for an order approving (i) an ex
parte order (a) scheduling a hearing to consider approval of the Disclosure Statement and approving notice procedures relating
thereto; (b) scheduling a hearing on Plan confirmation and approving notice procedures relating thereto; and (c) establishing a
deadline for motions to estimate claims for purposes of rights offering participation; (ii) an order on notice (a) approving the
Disclosure Statement; (b) establishing solicitation procedures; and (c) fixing a distribution record date; and (iii) an order on
notice (a) establishing procedures for participation in the rights offering; and (b) approving the subscription form.

          PLEASE TAKE FURTHER NOTICE THAT:

1.        A hearing will be held before the Honorable Allan L. Gropper, United States Bankruptcy Judge, in Room 617 of the
United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), One Bowling Green, New
York, New York, on ____, 2007 at 11:00 a.m., prevailing Eastern Time (the "Disclosure Statement Hearing") to consider the
entry of an order, among other things, finding that the Disclosure Statement contains "adequate information" within the meaning
ascribed in section 1125 of the Bankruptcy Code, and approving the Disclosure Statement.

2.  The Disclosure Statement and Plan are on file with the Bankruptcy Court and may be examined by interested parties by accessing the Bankruptcy Court's Electronic Case Filing System which can be found at http://www.nysb.uscourts.gov/, the official website for the Bankruptcy Court. In addition, copies may be obtained upon request to Bankruptcy Services, LLC at telephone number: (866) 715-0768 or at the Debtors' restructuring website at http://www.nwa-restructuring.com/.

3.  Responses and objections, if any, to the approval of the Disclosure Statement or any of the other relief sought by the Debtors in connection with approval of the Disclosure Statement must be in writing; state the specific page number of the Disclosure Statement to which the objection refers; state the specific language proposed to be deleted, if a deletion is sought; include a draft of the precise language that the objecting party proposes be added or substituted; and state the reasons and statutory or other authority therefor; and be filed, together with proof of service, with the Bankruptcy Court, One Bowling Green, New York, New York 10004-1408 and served upon the following parties (the "Notice Parties"):

  (a)  the Clerk of the Bankruptcy Court, One Bowling Green, New York, New York 10004-1408;

  (b)  Cadwalader, Wickersham & Taft LLP, One World Financial Center, New York, New York 10281, Attention: Bruce R. Zirinsky, Esq. (Facsimile: 212-504-6666), counsel to the Debtors;

  (c)  Otterbourg, Steindler, Houston & Rosen, P.C., 230 Park Avenue, New York, New York 10169, Attention: Scott L. Hazan, Esq. (Facsimile: 212- 682-6104), counsel to the Official Committee of Unsecured Creditors;

  (d)  Jenner & Block LLP, One IBM Plaza, Chicago, IL 60611-7603, Attention: Catherine L. Steege, Esq. (Facsimile: (312) 840-7352), counsel to the Official Committee of Retired Employees;

  (e)  Latham & Watkins LLP, Sears Tower, Suite 5800, 223 South Wacker Drive, Chicago, IL 60606, Attention: Joe Athanas, Esq. (Facsimile: 312-993-9796), counsel to the Debtors' postpetition lenders; and

  (f)  the Office of the United States Trustee, 33 Whitehall Street, 21st Floor, New York, New York 10004, Attention: Brian Masumoto, Esq.

  so as to be actually received on or before 4:00 p.m. prevailing Eastern Time on ____, 2007.

**4.  IF ANY OBJECTION TO THE DISCLOSURE STATEMENT IS NOT FILED AND SERVED STRICTLY AS PRESCRIBED HEREIN, THE OBJECTING PARTY MAY BE BARRED FROM OBJECTING TO THE ADEQUACY OF THE DISCLOSURE STATEMENT AND MAY NOT BE HEARD AT THE DISCLOSURE STATEMENT HEARING.**

5.  Upon approval of the Disclosure Statement by the Bankruptcy Court, holders of claims against the Debtors who are entitled to vote on the Plan will receive a CD-ROM of the Disclosure Statement, the Plan, and various documents related thereto, unless otherwise ordered by the Bankruptcy Court. A hearing to consider confirmation of the Plan will be held on ____, 2007 at 11:00 a.m. prevailing Eastern Time (the "Confirmation Hearing"). Objections, if any, to the confirmation of the Plan must be filed, together with proof of service, with the Bankruptcy Court and served upon the Notice Parties above so that they are received on or before 4:00 p.m., prevailing Eastern Time, on ____, 2007.

6.  The Disclosure Statement Hearing and Confirmation Hearing may be adjourned by the Debtors from time to time without further notice to parties in interest other than by an announcement in Bankruptcy Court of such adjournment on the date scheduled for the Hearing, or by notation on the official public docket of the Bankruptcy Court of the date of the Disclosure Statement Hearing or Confirmation Hearing, respectively.

  **PLEASE TAKE FURTHER NOTICE THAT IF YOU ARE THE HOLDER OF A CLASS 1D GENERAL UNSECURED CLAIM AGAINST THE CONSOLIDATED DEBTORS YOU MAY BE ENTITLED TO PARTICIPATE IN THE RIGHTS OFFERING:**

7.  The Debtors are proposing a rights offering in connection with their Plan (the "Rights Offering"). If the Bankruptcy Court approves the Rights Offering, the Debtors expect to commence the Rights Offering on ____, 2007, concluding on ____, 2007. The terms and conditions of the Rights Offering are fully set forth in the Disclosure Statement, which may be obtained as set forth in paragraph 2, above.

8.  For purposes of participation in the Rights Offering, and not for the purpose of voting, or the allowance of, or distribution on account of, a claim, and without prejudice to the rights of the Debtors in any other context, the Debtors propose that each timely-filed claim within Class 1D General Unsecured Claims, including any claim as to which no objection has been interposed prior to the date fixed by the Bankruptcy Court for determining eligibility to vote on the Plan ("Voting Record Date"), be temporarily allowed in an amount equal to the amount of such claim as set forth in a proof of claim that was timely filed, or which properly amends a timely filed claim, or, if no proof of claim was filed, the amount of such claim as set forth in each

Debtor's Schedules of Assets and Liabilities (the "Schedules").  The foregoing general procedure will be subject to the following exceptions:

(a)     If a claim is deemed allowed in accordance with the Plan, such claim is allowed for Rights Offering purposes to the extent provided in the Plan and in the deemed allowed amount set forth in the Plan, except as otherwise set forth in the Plan;

(b)     If a claim for which a proof of claim has been timely filed is marked as contingent or unliquidated, such claim shall not be entitled to participate in the Rights Offering; provided, however, that the portion of the claim, if any, that is non-contingent or liquidated shall be entitled to participate in the Rights Offering, unless the Debtors have filed an objection to the claim;

(c)     If a claim has been estimated or otherwise allowed for Rights Offering purposes by order of the Bankruptcy Court, such claim is temporarily allowed in the amount so estimated or allowed by the Bankruptcy Court for Rights Offering purposes only, and not for purposes of voting, allowance or distribution;

(d)     If a claim is listed in the Schedules as contingent, unliquidated, or disputed and a proof of claim was not (i) filed by the applicable bar date for the filing of proofs of claim established by the Bankruptcy Court or (ii) deemed timely filed by an order of the Bankruptcy Court prior to the Voting Record Date, unless the Debtors have consented in writing, such claim will be disallowed for Rights Offering purposes;

(e)     If the Debtors have served an objection to a claim before the Voting Record Date and the objection has not been adjudicated or otherwise resolved, such claim will be temporarily disallowed for Rights Offering purposes only and not for purposes of allowance or distribution, except to the extent and in the manner as may be set forth in the objection, or as may be ordered by the Bankruptcy Court;

(f)     If a claim arises from or is related to a tax indemnity agreement, and has not been allowed, such claim is disallowed for Rights Offering purposes;

(g)     If a claim arises from or is related to pre-petition litigation, administrative or regulatory proceeding, or grievance or other labor proceeding against any of the Debtors, and has not been allowed, such claim is disallowed for Rights Offering purposes;

(h)     The claims granted to each of the Airline Pilots Association, International, the International Association of Aerospace Workers & Machinists, District 143, the Aircraft Technical Support Association, the Transport Workers Union of America – CWA and the Northwest Airlines Meteorology Association (the "Unions") in connection with the modification of each Union's collective bargaining agreement (the "Union Claims"), shall be temporarily allowed to the full extent of the claim held by the Union as of the Voting Record Date for purposes of the Rights Offering, notwithstanding that pursuant to the agreements creating the Union Claims, such Union Claims do not arise until the effective date of a plan of reorganization; provided that such Union Claims will participate on the same terms and conditions as all other claims participating in the Rights Offering; and

(i)     If a claim arises from or is related to an executory contract or lease that the Debtors have not yet assumed or rejected, such claim is

temporarily allowed for Rights Offering purposes only, and not for purposes of allowance or distribution, in such amount as the Debtors and the claim holder may agree, subject to Bankruptcy Court approval.

9.      If any creditor seeks to challenge the allowance of its claim for Rights Offering purposes in accordance with the above procedures, such creditor must serve on the Debtors and file with the Bankruptcy Court (with a copy to chambers) a motion for an order temporarily allowing such claim for purposes of participating in the Rights Offering on or before (i) March 16, 2007; or (ii) with respect to those claims described in subsection (e) above, five (5) business after the Debtors file an objection to such creditor's claim, in the event the Debtors file such objection in advance of the Voting Record Date.  As to any creditor filing such a motion, such creditor should not be entitled to participate in the Rights Offering unless temporarily allowed by the Bankruptcy Court for Rights Offering purposes, after notice and a hearing.

Dated:      New York, New York
            _____, 2007

                                    CADWALADER, WICKERSHAM & TAFT LLP


                                    /s/ DRAFT_____
                                    Bruce R. Zirinsky (BZ 2990)
                                    Gregory M. Petrick (GP 2175)
                                    One World Financial Center
                                    New York, New York  10281
                                    Telephone:  (212) 504-6000
                                    Facsimile:  (212) 504-6666

                                    - and -

                                    Mark C. Ellenberg (ME 6927)
                                    1201 F Street N.W., Suite 1100
                                    Washington, DC  20004
                                    Telephone:  (202) 862-2200
                                    Facsimile:  (202) 862-2400

                                    Attorneys for Debtors and
                                    Debtors In Possession

Confirmation Hearing Date and Time: _____, 2007 at _____
Confirmation Objection Deadline: _____, 2007 at _____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------  x

|  |  |
|---|---|
| In re: | **Chapter 11** |
|  | **Case No. 05-17930 (ALG)** |
| NORTHWEST AIRLINES CORPORATION, | **Jointly Administered** |
| NWA FUEL SERVICES CORPORATION, |  |
| NORTHWEST AIRLINES HOLDINGS CORPORATION, |  |
| NWA INC., |  |
| NORTHWEST AEROSPACE TRAINING CORPORATION, |  |
| NORTHWEST AIRLINES, INC., |  |
| NWA AIRCRAFT FINANCE, INC., |  |
| MLT INC., |  |
| COMPASS AIRLINES, INC. F/K/A NORTHWEST AIRLINES CARGO, INC., |  |
| NWA RETAIL SALES INC., |  |
| MONTANA ENTERPRISES, INC., |  |
| AIRCRAFT FOREIGN SALES, INC., |  |
| NW RED BARON LLC, AND |  |
| NWA WORLDCLUB, INC. |  |
| Debtors. |  |

-----------------------------------------------------------------------  x

**NOTICE OF (I) CONFIRMATION HEARING AND OBJECTION DEADLINE
WITH RESPECT TO THE DEBTORS' PLAN; AND (II) PROPOSED ADMINISTRATIVE BAR DATE**

**TO ALL CREDITORS, EQUITY INTEREST HOLDERS AND PARTIES IN INTEREST, PLEASE TAKE NOTICE THAT:**

1. *Approval of Disclosure Statement.* On _____, 2007, the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") entered an order (the "Disclosure Approval Order") approving the Debtors' Disclosure Statement, dated February 15, 2007 (as may be amended, the "Disclosure Statement"), filed by Northwest Airlines Corporation ("NWA Corp.") and the above-captioned debtors, as debtors and debtors in possession in these chapter 11 cases (collectively, the "Debtors"), and directed the Debtors to solicit votes with regard to the acceptance or rejection of the Debtors' First Amended Joint and Consolidated Plan of Reorganization Under Chapter 11 of the Bankruptcy Code, dated February 15, 2007, annexed as an exhibit thereto (as may be further amended, the "Plan").

2. *Confirmation Hearing.* A hearing (the "Confirmation Hearing") to consider confirmation of the Plan will be held at 11:00 a.m. prevailing Eastern Time, on _____, 2007, before the Honorable Allan L. Gropper, United States Bankruptcy Judge, in Room 617 of the Bankruptcy Court, One Bowling Green, New York, New York 10004-1408. The Confirmation Hearing may be continued from time to time without further notice other than the announcement by the Debtors in open court of the adjourned date(s) at the Confirmation Hearing or any continued hearing, and the Plan may be modified, if necessary, prior to, during, or as a result of the Confirmation Hearing, without further notice to interested parties.

3. *Voting Deadline.* If you hold a claim against one of the Debtors as of ___, 2007, and are entitled to vote to accept or reject the Plan, you have received a ballot form (the "Ballot") and voting instructions appropriate for your claim(s). For your vote to accept or reject the Plan to be counted, you must complete all required information on the Ballot, execute and return the completed Ballot to the address indicated on the Ballot by 4:00 p.m. prevailing Eastern Time on _____, 2007 (the "Voting Deadline"). Any failure to follow the voting instructions included with the Ballot may disqualify your Ballot and your vote.

4.    *Rights Offering Expiration Date.* If you are an Eligible Holder (as defined in the Plan) of an Allowed Class 1D General Unsecured Claim against the Consolidated Debtors as of ___, 2007, you have received a subscription form (the "Subscription Form"). To exercise your subscription rights, you must return a duly completed Subscription Form to the Subscription Agent (defined in the Plan) so that such form is actually *received* by the Subscription Agent on or before ____, 2007 and (ii) you must pay the purchase price on or before this date, either by wire transfer to the Subscription Agent in accordance with the wire instructions set forth on the Subscription Form or by bank or cashier's check delivered to the Subscription Agent along with the Subscription Form. If you are electing to subscribe for additional shares you must indicate that amount of shares in the appropriate place on the Subscription Form and pay for such additional shares in the same manner as described above. **If the Subscription Agent for any reason does not receive from a given Eligible Holder both a timely and duly completed Subscription Form and timely payment of such holder's Subscription Purchase Price, such Eligible Holder will be deemed to have relinquished and waived its right to participate in the Rights Offering.**

5.    *Parties in Interest Not Entitled to Vote.* Holders of claims or interests who are not receiving any distribution under the Plan are not entitled to vote on the Plan and will receive a Notice of Non-Voting Status rather than a Ballot. If you disagree with the Debtors' classification of your claim or believe that you should be entitled to vote on the Plan, then you must serve on the Debtors and file with the Bankruptcy Court a motion for an order pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure (a "Rule 3018(a) Motion") temporarily allowing your claim in a different amount or in a different class for purposes of voting to accept or reject the Plan. All Rule 3018(a) Motions must be filed by the earlier of (A) ____, 2007; and (B) service of notice of an objection, if any, to such claim. In accordance with Bankruptcy Rule 3018, as to any creditor filing a Rule 3018(a) Motion, such creditor's Ballot will not be counted unless temporarily allowed by the Bankruptcy Court for voting purposes, after notice and a hearing prior to the Voting Deadline. Rule 3018(a) Motions that are not timely filed and served in the manner as set forth above will not be considered.

6.    *Objections to the Plan.* Any objections to the Plan must be in writing, and state the name and address of the objecting party and the nature of the claim or interest of such party, provide a concise statement of the basis for such objection or proposed modification, including, if applicable: the specific page number of the Plan to which the objection refers, the specific language proposed to be deleted, if a deletion is sought, a draft of the precise language that the objecting party proposes be added or substituted, and the reasons and statutory or other authority therefor and shall be served and filed, together with proof of service, with the Bankruptcy Court so that they are received no later than 4:00 p.m., prevailing Eastern Time, on _____, 2007 by (a) the Clerk of the Bankruptcy Court, One Bowling Green, New York, New York 10004-1408; (b) Cadwalader, Wickersham & Taft LLP, One World Financial Center, New York, New York 10281, Attention: Bruce R. Zirinsky, Esq. (Facsimile: 212-504-6666), counsel to the Debtors; (c) Otterbourg, Steindler, Houston & Rosen, P.C., 230 Park Avenue, New York, New York 10169, Attention: Scott L. Hazan, Esq. (Facsimile: 212- 682-6104), counsel to the Official Committee of Unsecured Creditors; (d) Jenner & Block LLP, One IBM Plaza, Chicago, IL 60611-7603, Attention: Catherine L. Steege, Esq. (Facsimile: (312) 840-7352), counsel to the Official Committee of Retired Employees; (e) Latham & Watkins LLP, Sears Tower, Suite 5800, 223 South Wacker Drive, Chicago, IL 60606, Attention: Joe Athanas, Esq. (Facsimile: 312-993-9796), counsel to the Debtors' postpetition lenders; and (f) the Office of the United States Trustee, 33 Whitehall Street, 21st Floor, New York, New York 10004, Attention: Brian Masumoto, Esq.

7.    *Administrative Expense Claim Bar Date:* If you hold any right to payment, whether secured or unsecured, constituting a cost or expense of administration of any of the chapter 11 cases under sections 503(b), 507(a)(1) and 1114(e) of the Bankruptcy Code, including, without limitation, any actual and necessary costs and expenses of preserving the Debtors' estates, any actual and necessary costs and expenses of operating the Debtors' businesses, any indebtedness or obligations incurred or assumed by the Debtors, as debtors in possession, during the chapter 11 cases including, without limitation, for the acquisition or lease of property or an interest in property or the rendition of services, any allowances of compensation and reimbursement of expenses to the extent allowed by Final Order under section 330 or 503 of the Bankruptcy Code, and any fees or charges assessed against the estates of the Debtors under section 1930 of chapter 123 of title 28 of the United States Code, the Plan proposes that you must file such claim by **SIXTY CALENDAR DAYS AFTER THE EFFECTIVE DATE OF THE PLAN (the "Administrative Expense Claim Bar Date"). Any requests for payment of Administrative Expense Claims that are not properly filed and served by the Administrative Expense Claim Bar Date will not appear on the register of claims maintained by the Claims Agent and will be disallowed automatically without the need for any objection from the Debtors or the Reorganized**

Debtors or any action by the Bankruptcy Court.

       **8.**   *Inquiries.* Any party in interest wishing to obtain (i) information about the solicitation procedures; or (ii) copies of the Disclosure Statement or the Plan, should telephone the Debtors' balloting agent, Bankruptcy Services LLC at (866) 715-0768. Parties may also view such documents by accessing the Bankruptcy Court's Electronic Case Filing System which can be found at www.nysb.uscourts.gov, the official website for the Bankruptcy Court, or the Debtors' restructuring website at http://www.nwa-restructuring.com/.

       **9.**   *Injunction.* The Plan contains an injunction that prevents, among other things, any holder of any Claim or Equity Interest and other parties in interest, along with their respective present or former employees, agents, officers, directors or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.

Dated:      New York, New York
              _____, 2007

                                        CADWALADER, WICKERSHAM & TAFT LLP

                                        */s/ DRAFT*_____
                                        Bruce R. Zirinsky (BZ 2990)
                                        Gregory M. Petrick (GP 2175)
                                        One World Financial Center
                                        New York, New York  10281
                                        Telephone:  (212) 504-6000
                                        Facsimile:  (212) 504-6666

                                        - and -

                                        Mark C. Ellenberg (ME 6927)
                                        1201 F Street N.W., Suite 1100
                                        Washington, DC  20004
                                        Telephone:  (202) 862-2200
                                        Facsimile:  (202) 862-2400

                                        Attorneys for Debtors and
                                        Debtors In Possession

# EXHIBIT SIX

## U S B C - Southern District of New York
## Case No. 05-17930

**Disclosure Statement with Respect to Debtors' First Amended Joint
and Consolidated Plan of Reorganization**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| ————————————————————————— x | Chapter 11 |
| In re: : | |
| : | Case No. 05-17930 (ALG) |
| : | |
| NORTHWEST AIRLINES CORPORATION, : | Jointly Administered |
| NWA FUEL SERVICES CORPORATION, : | |
| NORTHWEST AIRLINES HOLDINGS CORPORATION, | |
| NWA INC., : | |
| NORTHWEST AEROSPACE TRAINING CORPORATION, : | |
| NORTHWEST AIRLINES, INC., | |
| NWA AIRCRAFT FINANCE, INC., : | |
| MLT INC., | |
| COMPASS AIRLINES, INC. F/K/A NORTHWEST AIRLINES : | |
| CARGO, INC., | |
| NWA RETAIL SALES INC., : | |
| MONTANA ENTERPRISES, INC., | |
| AIRCRAFT FOREIGN SALES, INC., : | |
| NW RED BARON LLC, AND | |
| NWA WORLDCLUB, INC. : | |
| : | |
| Debtors. : | |
| ————————————————————————— : | |

## DISCLOSURE STATEMENT WITH RESPECT TO
## DEBTORS' FIRST AMENDED JOINT AND CONSOLIDATED
## PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

| | |
|---|---|
| Bruce R. Zirinsky (BZ 2990) | Mark C. Ellenberg (ME 6927) |
| CADWALADER, WICKERSHAM & TAFT LLP | CADWALADER, WICKERSHAM & TAFT LLP |
| One World Financial Center | 1201 F St. N.W., Suite 1100 |
| New York, New York 10281 | Washington, DC 20004 |
| Telephone: (212) 504-6000 | Telephone: (202) 862-2200 |
| Facsimile: (212) 504-6666 | Facsimile: (202) 862-2400 |

Dated:   March 30, 2007

## SUMMARY OF THE PLAN OF REORGANIZATION

**A.**    **Introduction**.

Northwest Airlines Corporation ("NWA Corp.") and its subsidiaries (collectively the "Debtors" or "Northwest") are soliciting votes from their unsecured creditors for the acceptance of their Plan of Reorganization. The Plan will permit Northwest to continue in business on a sound economic footing and will maximize recoveries for all creditors by preserving the going concern value of Northwest. *Please refer to the attached Glossary for definitions of terms used in this Disclosure Statement.*

Under the Plan, Allowed administrative, priority and secured claims are unimpaired and will be satisfied in full. The acceptance of the Plan by holders of these Claims is not required and Northwest is not soliciting their votes.

Holders of General Unsecured Claims are impaired under the Plan and are entitled to vote. Northwest is asking that all holders of General Unsecured Claims vote to accept the Plan.

Under the Plan, holders of Allowed General Unsecured Claims against any of the Debtors other than Northwest Airlines, Inc., NWA Corp., Northwest Airlines Holdings Corporation, and NWA Inc. (the "Consolidated Debtors") will receive payment in full, in Cash, without interest. Holders of Allowed General Unsecured Claims against the Consolidated Debtors of $20,000 or less, or who elect to reduce their Allowed General Unsecured Claims to $20,000, will also receive payment in full, in Cash, without interest.

Holders of all other Allowed General Unsecured Claims against the Consolidated Debtors will receive shares of New Common Stock of NWA Corp. in exchange for their Claims, and Eligible Holders will also be entitled to subscribe for additional shares of New Common Stock of NWA Corp. pursuant to the underwritten Rights Offering more fully described in this Disclosure Statement. Please refer to section V.D. for a discussion of the Rights Offering.

The substantive consolidation of the Consolidated Debtors will eliminate claims based on a guaranty of a Consolidated Debtor of the primary obligation of another Consolidated Debtor. However, holders of Allowed General Unsecured Claims against one of the Consolidated Debtors who also hold a guaranty from another Consolidated Debtor will be entitled to receive additional shares of New Common Stock of NWA Corp. as compensation for the impact of the consolidation.

Based on the current estimates of the Reorganized Debtors' value, and the current estimates of General Unsecured Claims that will ultimately be Allowed, holders of Allowed General Unsecured Claims will receive New Common Stock having a value between 66% and 83% of their Allowed Claims, with a midpoint estimate of 74%. Holders of Allowed General Unsecured Claims who also have a guaranty from a Consolidated Debtor will receive additional shares of New Common Stock having a value between 6% and 8% of their guaranty, with a midpoint estimate at 7%, bringing the estimated overall recovery for such holders to 72%-91%, with a midpoint estimate of 81%.

Under the Plan, 225,788,536 shares of New Common Stock will be issued to holders of Allowed General Unsecured Claims against the Consolidated Debtors, 8,622,772, shares of New Common Stock will be issued to holders of Allowed General Unsecured Claims against the Consolidated Debtors who also hold a guaranty from a Consolidated Debtor, and 23,611,111 shares of New Common Stock will be sold pursuant to the Rights Offering. In addition, the Rights Offering Sponsor will purchase

directly 4,166,667 shares of New Common Stock. Please refer to section V.G. for a discussion of the New Common Stock. Please refer to section IX.E for a discussion of the management equity plan.

Shareholders of NWA Corp. will receive no distributions under the Plan and their outstanding stock will be cancelled. Accordingly, shareholders of NWA Corp. are deemed to reject the Plan and are not entitled to vote.

The Plan provides for the substantive consolidation of the Consolidated Debtors and treatment of Claims against each Consolidated Debtor as Claims against a single Consolidated Debtor. Claims against each other Debtor are treated separately under the Plan.

The following table summarizes the treatment accorded creditors and other shareholders of Northwest under the Plan.

| Class | Description | Treatment | Entitled to Vote | Amount of Claim(s) | Estimated Recovery |
|---|---|---|---|---|---|
| | Administrative Expense Claims | Payment in full (or as otherwise agreed). | No | Ordinary course | 100% |
| | Compensation of Professionals Claims | Payment in full (or as otherwise agreed). | No | $42,285,000 | 100% |
| | Priority Tax Claims | Payment in full on the Effective Date or over six years from the date of assessment of the tax with interest or payment as otherwise agreed. | No | $66,834,000 | 100% |
| | DIP Claims | Payment in full/conversion to Exit Facility. | No | $1,225,000,000 | 100% |
| 1A 2A 3A 4A 5A 6A 7A 8A 9A 10A 11A | Priority Non-Tax Claims | Payment in full. | No | Not Material | 100% 100% 100% 100% 100% 100% 100% 100% 100% 100% 100% |
| 1B-1 | 1110(a) Aircraft Secured Claims | The maturity will be reinstated as such maturity existed before default and paid in accordance with the terms of the applicable loan agreements. Claimants will retain security interests and are unimpaired by the Plan. | No | $2,539,460,000 | 100% |
| 1B-2 | Restructured Aircraft Secured Claims | The Claims in this Class will be treated in accordance with the applicable restructuring agreement and the Final Order that approved such agreement and are unimpaired by the Plan. | No | $1,422,041,000 | 100% |

| Class | Description | Treatment | Entitled to Vote | Amount of Claim(s) | Estimated Recovery |
|---|---|---|---|---|---|
| 1B-3 | N301US and N303US Aircraft Secured Claims | The maturity of Claims will be reinstated as such maturity existed before default, the Debtors will cure such default and pay the balance of the Claims in accordance with the terms of the applicable loan agreements. Claimants will retain security interests and are unimpaired by the Plan. | No | 9,285,000 | 100% |
| 1C 3B | Other Secured Claims | The treatment of each Other Secured Claim is set forth in Schedule 4.5 attached to the Plan. | No | $263,922,000 $124,218,000 | 100% 100% |
| 1D | General Unsecured Claims Consolidated Debtors | (i) Pro Rata share of New Common Stock For Distribution to Creditors and (ii), if the Eligible Holder elected to participate in the Rights Offering, the right to purchase its Rights Offering Pro Rata Share of the New Common Stock For Distribution Pursuant to Rights Offering. In addition, each holder who also holds a guaranty from one or more Consolidated Debtors with respect to its claim will receive, as compensation for the impact of the substantive consolidation its share of the New Common Stock For Distribution to Creditors With a Guaranty. | Yes | $8,750,000,000 – $9,500,000,000 | 66% -83% midpoint estimate of 74% |
| 2B 3C 4B 5B 6B 7B 8B 9B 10B 11B | General Unsecured Claims Non-Consolidated Debtors | Full payment in Cash. | Yes | $53,000 $67,000 $5,605,000 $0 $0 $0 $0 $0 $0 $0 | 100% 100% 100% 100% 100% 100% 100% 100% 100% 100% |
| 1E | Convenience Class Claims | Full payment in Cash. | Yes | $14,974,000[1] | 100% |
| 1F 2C 3D 4C 6C 9C 11C | Intercompany Claims | $1.00 | Yes | $548,144,000 $2,044,000 $0 $0 $640,000 $0 $64,952,000 | N/A |
| 1G 2D 3E | Equity Interests in Debtors Other than | Unimpaired. | No | | N/A |

---

[1] This number does not reflect potential Claims held by General Unsecured Creditors who make the Convenience Class Election, as further discussed in section V.C.

| Class | Description | Treatment | Entitled to Vote | Amount of Claim(s) | Estimated Recovery |
|-------|-------------|-----------|------------------|--------------------|--------------------|
| 4D 5C 6D 7C 8C 9D 10C 11D | NWA Corp. | | | | |
| 1H | Preferred Stock Interests in NWA Corp. | Cancellation of Equity Interests and no distribution. | No | | 0% |
| 1I | Common Stock Interests in NWA Corp. | Cancellation of Equity Interests and no distribution. | No | | 0% |

**B.    Rights Offering.**

As part of the Plan, Northwest will raise $750 million in new capital through the sale of additional common stock. This will include (i) the offer and sale of 23,611,111 shares of New Common Stock pursuant to a Rights Offering, representing $637.5 million of the total amount of capital to be raised; and (ii) the sale of 4,166,667 additional shares to the Rights Offering Sponsor, representing $112.5 million of the total amount of capital to be raised. The Plan gives certain unsecured creditors (the "Eligible Holders") with an Allowed General Unsecured Claim against the Consolidated Debtors as of the Subscription Rights Record Date the right to purchase at least its Rights Offering Pro Rata Share of the additional common stock in the Rights Offering. Such Eligible Holders have the right, but not the obligation, to participate in the Rights Offering. The Rights Offering will also allow each Eligible Holder to subscribe for common stock not purchased by other Eligible Holders by electing to subscribe for up to 200% of such Eligible Holder's initial Rights Offering common share allotment.

The Rights Offering will commence on the Subscription Commencement Date, which is a Business Day approved by the Bankruptcy Court pursuant to the Debtors' Solicitation Procedures Motion. The Rights Offering shall expire on the Rights Offering Expiration Date, which will be approximately 28 days after the Subscription Commencement Date (a period to be coterminous with the solicitation period). Each Eligible Holder of a Class 1D General Unsecured Claim intending to participate in the Rights Offering must affirmatively elect to exercise its Subscription Right(s) on or prior to the Rights Offering Expiration Date. Eligible Holders electing to subscribe for additional shares pursuant to the oversubscription rights described above must indicate that amount of shares in the appropriate place on the Subscription Form and pay for such additional shares in the same manner as the shares purchased pursuant to the Subscription Right are paid for.

A form for the exercise of the right to purchase common stock pursuant to the Rights Offering will be sent in addition to the ballot for Eligible Holders of Allowed Class 1D General Unsecured Claims. If you received this form, and you want to purchase additional stock, you must return the filled out form and full payment for the new stock by the Rights Offering Expiration Date.

After the Rights Offering Expiration Date, the shares in respect of unexercised Subscription Rights shall be acquired by the Rights Offering Sponsor pursuant to a Rights Offering Sponsor Agreement in the form attached as Exhibit A to the Plan. The Rights Offering Sponsor is JPMorgan Securities Inc. This stand-by commitment and additional equity investment guarantees that all of the common stock will be purchased and that Reorganized Northwest will receive the full $750 million of new capital. Under the Rights Offering Sponsor Agreement, the Debtors retain the right to seek up to an additional $150 million

private equity investment. The Debtors have not entered into an agreement to raise an additional private equity investment. A self-styled ad hoc committee of certain Claims holders (the "ACC") believes that an additional equity issuance would further dilute the recoveries available to unsecured creditors. The ACC further believes that any need for additional capital should come from an upsized rights offering available to all unsecured creditors. The Debtors disagree with each of the ACC's contentions.

**C.    Exit Financing**.

The Plan contemplates that Northwest will convert the existing debtor in possession financing facility into an exit financing facility. This conversion is expressly provided for in the debtor in possession financing facility documentation. Upon conversion, the exit financing facility would consist of a $175 million revolving credit facility including a $75 million sub-limit letter of credit facility and a $1.050 billion term loan, each with a maturity date of August 21, 2013. The terms and conditions associated with the exit facility were approved by the Bankruptcy Court on August 8, 2006 when the debtor in possession financing facility was put in place. The Plan also provides Northwest the option to elect alternative exit financing, or amend the existing facility from time to time with appropriate consents, should comparable or more attractive financing become available on better terms.

**D.    Voting on the Plan and Subscribing to the Rights Offering**.

Holders of unsecured Claims are impaired under the Plan and are entitled to vote. Northwest is asking that all holders of unsecured Claims vote for the acceptance of the Plan. Because the Allowed Claims against Northwest will exceed the value of its assets, it is anticipated that creditors will not receive full recoveries on their Claims. In addition, stockholders of NWA Corp. will not receive any recovery. Stockholders of NWA Corp. will be deemed to have rejected the Plan and their votes are not being solicited. A copy of the Plan is attached as Exhibit A to this Disclosure Statement.

This Disclosure Statement provides the information needed to make an informed decision whether to accept or reject the Plan and whether to subscribe under the Rights Offering. Not everyone is entitled to vote or to subscribe. If you are entitled to vote, a ballot form will be included in this package. If a ballot is not included, you are not entitled to vote. If you are entitled to subscribe, a Subscription Form will be included in this package. If a Subscription Form is not included, you are not entitled to subscribe. Please note that if there is any inconsistency between the Plan and the descriptions in the Disclosure Statement, the terms of the Plan will govern. This Disclosure Statement and the Plan are the only materials creditors should rely upon to determine whether to accept or reject the Plan.

---

The *last day* to vote to accept or reject the Plan is May 7, 2007. To be counted, your ballot must be actually *received* by the Balloting Agent by this date.

The *record date* for determining which creditors may vote on the Plan is March 29, 2007.

Recommendation: The Debtors and the Creditors Committee urge creditors to vote to accept the Plan.

---

If you are entitled to subscribe to additional shares of New Common Stock under the Rights Offering, you must exercise your rights in the following manner and within the following time period and deadlines:

> **The *last day* to exercise the Subscription Rights is May 7, 2007.  To exercise the Subscription Rights, (i) you must return a duly completed Subscription Form to the Subscription Agent so that such form is actually *received* by the Subscription Agent on or before this date; and (ii) you must pay the Subscription Purchase Price on or before this date, either by wire transfer to the Subscription Agent in accordance with the wire instructions set forth on the Subscription Form or by bank or cashier's check delivered to the Subscription Agent along with the Subscription Form.  If you are electing to subscribe for additional shares you must indicate that amount of shares in the appropriate place on the Subscription Form and pay for such additional shares in the same manner as described above.**
>
> **The *record date* for determining which creditors may exercise the Subscription Rights is March 29, 2007.**

Copies of this Disclosure Statement are available upon request made to the Balloting Agent, at the following address:

| **Balloting Agent** |
| --- |
| Overnight or Hand/Delivery |
| Bankruptcy Services LLC |
| 757 Third Avenue, Third Floor |
| New York, New York, 10017 |
| Tel: (866) 715-0768 |
| Fax: (646) 282-2501 |
| |
| First Class Mail: |
| c/o Bankruptcy Services, LLC |
| FDR Station |
| PO Box 5014 |
| New York, NY 10150-5014 |
| |
| Attn: Northwest |

Only actual votes will be counted.  A failure to return a ballot will not be counted either as a vote for or against the Plan.  Any improperly completed or late ballot will not be counted.  Any Ballot that indicates both an acceptance and rejection of the Plan will be deemed a vote to accept the Plan.  If no votes to accept or reject the Plan are received with respect to a particular class, the class will be deemed to have voted to accept the Plan.  If a creditor casts more than one Ballot voting the same claim or interest before the Voting Deadline, the latest dated Ballot received before the Voting Deadline will be deemed to reflect the voter's intent and thus to supersede any prior Ballots.  Creditors must vote all of their claims within a particular class with respect to a particular Debtor under the Plan either to accept or reject the Plan and may not split their votes within a particular class; thus, a Ballot (or a group of Ballots) within a particular class of a particular Debtor received from a single creditor that partially rejects and partially accepts the Plan will be deemed to have voted to accept the Plan.

E.      **Disclosure Statement Enclosures**.

        Accompanying this Disclosure Statement are copies of: (i) the Plan (Exhibit A); (ii)
Northwest's liquidation analysis (Exhibit B); (iii) the Court's order approving this Disclosure Statement
(Exhibit C); (iv) the notice of the time for filing acceptances or rejections of the Plan, the date and time of
the hearing to consider confirmation of the Plan and for filing objections to confirmation of the Plan
(Exhibit D); (v) the notice of the time for the exercise of rights to subscribe for additional common stock
in Reorganized NWA Corp. (Exhibit E); (vi) overview of the business plan (Exhibit F.1); (vii) financial
projections (Exhibit F.2); and (vii) a summary of unsecured claims Allowed in the Chapter 11 Cases
(Exhibit G).  In addition, those parties eligible to vote will receive a ballot for voting on the Plan.  Those
parties eligible to exercise Subscription Rights will receive a form for exercising Subscription Rights in
addition to a ballot for voting on the Plan.

F.      **Disclaimer**.

        **The Bankruptcy Court's approval of this Disclosure Statement does not constitute
either a guaranty of the accuracy of the information contained herein or an endorsement of the
Plan by the Bankruptcy Court.  This Disclosure Statement, along with any letter from the Creditors
Committee, is the only document authorized by the Bankruptcy Court to be used in connection
with the solicitation of votes accepting the Plan.  No representations other than those explicitly set
forth in this Disclosure Statement are authorized concerning Northwest, including the prospects of
its reorganized business, the value of its assets, or the Claims of its creditors.  The information
contained in this Disclosure Statement is for purposes of soliciting acceptances of the Plan and for
purposes of exercising Subscription Rights and may not be relied upon for any other purposes.**

        **This Disclosure Statement contains summaries of certain provisions of the Plan,
certain statutory provisions, certain documents related to the Plan, certain events in the case and
certain financial information.  Although Northwest believes that the Disclosure Statement and
related document summaries are fair and accurate, they are qualified to the extent that they do not
set forth the entire text of the Plan, such documents or any statutory provisions.  The terms of the
Plan govern in the event of any inconsistency with this Disclosure Statement.  All exhibits to the
Disclosure Statement are incorporated into and are a part of this Disclosure Statement as if set
forth in full herein.  The statements contained in this Disclosure Statement are made as of the date
hereof, unless otherwise specified, and Northwest disclaims any obligation to update any such
statements after the hearing on the approval of the Disclosure Statement.**

        **Safe harbor statement under the Private Securities Litigation Reform Act of 1995:
All forward-looking statements contained herein or otherwise made by Northwest involve material
risks and uncertainties and are subject to change based on numerous factors, including factors that
are beyond Northwest's control.  Accordingly, Northwest's future performance and financial
results may differ materially from those expressed or implied in any such forward-looking
statements.  Such factors include, but are not limited to, those described in this Disclosure
Statement.  Northwest does not undertake to publicly update or revise its forward-looking
statements even if experience or future changes make it clear that any projected results expressed
or implied therein will not be realized.**

        **This Disclosure Statement has been prepared pursuant to section 1125 of the
Bankruptcy Code and Rule 3016(b) of the Federal Rules Of Bankruptcy Procedure and is not
necessarily in accordance with federal or state securities laws or other similar laws.  Neither the
offer of New Common Stock nor the Rights Offering to holders of certain classes of Claims has
been registered under the Securities Act of 1933, as amended, (the "Securities Act") or similar state
securities or "blue sky" laws.  The offers and issuances are being made in reliance on the exemption**

from registration specified in section 1145 of the Bankruptcy Code.  None of the stock to be issued on the Effective Date or pursuant to the Rights Offering has been approved or disapproved by the Securities and Exchange Commission or by any state securities commission or similar public, governmental, or regulatory authority, and neither the Securities and Exchange Commission nor any such state authority has passed upon the accuracy or adequacy of the information contained in this Disclosure Statement or upon the merits of the Plan.  Any representation to the contrary is a criminal offense.  Persons or entities trading in or otherwise purchasing, selling or transferring securities of Northwest should evaluate this Disclosure Statement and the Plan in light of the purposes for which they were prepared.

Except as otherwise specifically noted, the financial information contained herein has not been audited by a certified public accountant and has not necessarily been prepared in accordance with generally accepted accounting principles.

All parties in interest are encouraged to read the entire Disclosure Statement carefully, including the Plan and other exhibits, before deciding to vote either to accept or reject the Plan or to exercise rights to acquire additional shares pursuant to the Rights Offering.  Holders of Claims should, however, not construe the contents of this Disclosure Statement as providing any legal, business, financial, or tax advice and should consult with their own advisors.

Bruce R. Zirinsky (BZ 2990)
Gregory M. Petrick (GP 2175)
CADWALADER, WICKERSHAM & TAFT LLP
Attorneys for Debtors and Debtors In Possession
One World Financial Center
New York, New York  10281
Telephone:  (212) 504-6000
Facsimile:  (212) 504-6666

- and -

Mark C. Ellenberg (ME 6927)
CADWALADER, WICKERSHAM & TAFT LLP
1201 F Street N.W., Suite 1100
Washington, DC  20004
Telephone:  (202) 862-2200
Facsimile:  (202) 862-2400

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x

**In re:**                                                      :     **Chapter 11**
                                                                :
**NORTHWEST AIRLINES CORPORATION, et al.,**    :     **Case No. 05-17930 (ALG)**
                                                                :
                                      **Debtors.**              :     **Jointly Administered**

------------------------------------------------------------x


**NOTICE OF FILING OF REVISED**
**PROPOSED DISCLOSURE STATEMENT APPROVAL ORDER**

            **PLEASE TAKE NOTICE** that on February 15, 2007, Northwest Airlines

Corporation ("NWA Corp.") and the above-captioned debtors, as debtors and debtors in

possession (collectively, the "Debtors"), filed their Debtors' Motion for (I) an Ex Parte Order (A)

Scheduling Hearing to Consider Approval of Disclosure Statement and Approving Notice

Procedures, (B) Scheduling Hearing on Plan Confirmation and Approving Notice Procedures,

and (C) Establishing Deadline for Motions to Estimate Claims for Purposes of Rights Offering

Participation; (II) an Order on Notice (A) Approving Disclosure Statement, (B) Establishing Solicitation Procedures, and (C) Fixing Distribution Record Date and (III) an Order on Notice (A) Establishing Procedures for Participation in Rights Offering, and (B) Approving Subscription Form (Docket No. 4903) (the "Motion").[1]

        **PLEASE TAKE FURTHER NOTICE** that attached hereto as Exhibit "1" is a revised version of the proposed order approving the Motion (the "Proposed Order"). Attached hereto as Exhibit "A" is Exhibit A to the Proposed Order, revised Ballots. Attached hereto as Exhibit "B" is Exhibit B to the Proposed Order, revised Notices of Non-Voting Status. Attached hereto as Exhibit "C" is Exhibit C to the Proposed Order, revised Subscription Forms. Attached hereto as Exhibit "D" is Exhibit D to the Proposed Order, a revised Notice of Commencement of the Rights Offering. Attached hereto as Exhibit "E" is a letter from the Debtors and a letter from the Creditors Committee recommending acceptance of the Plan.

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the Motion.

Dated:    Washington, D.C.
          March 30, 2007

                              CADWALADER, WICKERSHAM & TAFT LLP

                              */s/ Mark C. Ellenberg*
                              Bruce R. Zirinsky (BZ 2990)
                              Gregory M. Petrick (GP 2175)
                              One World Financial Center
                              New York, New York  10281
                              Telephone:  (212) 504-6000
                              Facsimile:  (212) 504-6666

                              - and -

                              Mark C. Ellenberg (ME 6927)
                              1201 F Street N.W., Suite 1100
                              Washington, DC  20004
                              Telephone:  (202) 862-2200
                              Facsimile:  (202) 862-2400

                              Attorneys For Debtors And Debtors In Possession

Bruce R. Zirinsky (BZ 2990)
Gregory M. Petrick (GP 2175)
CADWALADER, WICKERSHAM & TAFT LLP
Attorneys for Debtors and  Debtors In Possession
One World Financial Center
New York, New York  10281
Telephone:  (212) 504-6000
Facsimile:  (212) 504-6666

- and-

Mark C. Ellenberg (ME 6927)
CADWALADER, WICKERSHAM & TAFT LLP
1201 F Street N.W., Suite 1100
Washington, DC 20004
Telephone: (202) 862-2200
Facsimile: (202) 862-2400

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x

In re:                                          :

                                                :     **Chapter 11**

**NORTHWEST AIRLINES CORPORATION, et al.,**     :     **Case No. 05-17930 (ALG)**

                                                :

                               **Debtors.**     :     **Jointly Administered**

                                                :

-------------------------------------------------------------x

## AFFIDAVIT OF PUBLICATION

                    */s/ Gregory M. Petrick*
                    Bruce R. Zirinsky (BZ 2990)
                    Gregory M. Petrick (GP 2175)
                    CADWALADER, WICKERSHAM & TAFT LLP
                    One World Financial Center
                    New York, New York 10281
                    Telephone: (212) 504-6000
                    Facsimile:  (212) 504-6666

                    -and-

                    Mark C. Ellenberg (ME 6927)
                    CADWALADER, WICKERSHAM & TAFT LLP
                    1201 F Street, N.W., Suite 1100
                    Washington DC 20004
                    Telephone:  (202) 862-2200
                    Facsimile:  (202) 862-2400
                    Attorneys for the Debtors and Debtors-in-Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In re:                                    )        Chapter 11
                                          )
NORTHWEST AIRLINES                        )        Case No. 05-17930 (ALG)
                                          )
                    Debtor                )
                                          )
                                                   AFFIDAVIT OF PUBLICATION

STATE OF NEW YORK          )
                           )
COUNTY OF NEW YORK         )

I, PAUL C. MESCHES, being duly sworn, depose and say that I am the
Marketing Director of Porte Advertising, Inc., and that I arranged for the
publication of the attached notice in *The New York Times* on March 9, 2007.

The foregoing statements are true and correct to the best of my knowledge,
information and belief.

_____
Paul C. Mesches

Sworn to me this

3rd day of April 2007.

_____
Notary Public

MARIAH DUBIN
Notary Public, State of New York
No. 01DU6076302
Qualified in Nassau County
Commission Expires June 24, 20 10

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---

In re:                                    Chapter 11
NORTHWEST AIRLINES CORPORATION, et al.,   Case No. 05-17930 (ALG)
                        Debtors.          Jointly Administered

**NOTICE OF THE DEBTORS' CONSIDERATION OF POTENTIAL (A) UTILIZATION OF SECTION 382(L)(5) OF THE INTERNAL REVENUE CODE, AND (B) REQUEST FOR ENTRY OF A SELL DOWN ORDER AND TERMINATION OF THE ELECTIVE SHAREHOLDER OPTION IN CONNECTION THEREWITH TO ALL PERSONS OR ENTITIES WITH CLAIMS[1] AGAINST THE DEBTORS[2].**

PLEASE TAKE NOTICE that, on September 14, 2005, Northwest Airlines Corporation ("NWA Corp.") and certain of its direct and indirect subsidiaries (collectively, the "Debtors"), commenced cases under chapter 11 of title 11 of the United States Code (as amended, the "Bankruptcy Code"), subject to certain exceptions, Section 362 of the Bankruptcy Code operates as a stay of any act to obtain possession of any property of the Debtors' estates or of property from the Debtors' estates or to exercise control over property of the Debtors' estates.

PLEASE TAKE FURTHER NOTICE that, on October 28, 2005, upon the Debtors' motion, the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") entered a Final Order Pursuant to Sections 105, 362 and 541 of the Bankruptcy Code and Bankruptcy Rule 3001 Establishing Notification And Hearing Procedures for Trading Claims and Equity Securities (the "Order"). Pursuant to the Order, any person or entity that elects to become an Electing Claimholder (as defined in the Order) may freely trade and make a market in Claims without the requirement of advance notice to, and approval by, the Debtors, provided that such Electing Claimholder agrees to comply with the requirements of a Sell Down Notice (as defined in Exhibit 2C of the Order) if issued by the Bankruptcy Court.

PLEASE TAKE FURTHER NOTICE that, pursuant to paragraph 46(G) of the Order, the Debtors (i) are actively considering whether to utilize Section 382(l)(5) of the Internal Revenue Code, and (ii) may request, after notice and a hearing, the entry of an order by the Bankruptcy Court approving the issuance of a Sell Down Notice to issue, that the requirements of Section 382(l)(5) are satisfied.

PLEASE TAKE FURTHER NOTICE that, in connection with the foregoing, the Debtors may request, after notice and a hearing, that the Bankruptcy Court amend the Order to eliminate the ability of Claimholders, on or after the date of such amendment, to become Electing Claimholders in lieu of complying with the advance notice and consent procedures set forth in paragraphs 6(A)-(J) of the Order.

PLEASE TAKE FURTHER NOTICE that, upon the request of any person, Bankruptcy Services LLC ("BSI"), 757 Third Avenue, Third Floor, New York, New York 10017, tel. (866) 715-0768, fax (646) 282-2501, will supply a copy of the Order or the Election Notice (or a cost to be paid by the person requesting such document(s)), and at the prevailing fee being charged by BSI. BSI will accommodate document requests during normal business hours, Monday to Friday (excluding recognized holidays).[3]

Dated:    March 9, 2007.

---

[1] References to "Claims" herein are made in accordance with the definition of a "claim" in Section 101(5) of the Bankruptcy Code and includes a lessor's right to any current or future payment under or arising out of any lease with respect to which a debtor is one or more of its debtor affiliates is a lessee.

[2] Specifically, in addition to NWA Corp., the Debtors should be: NWA Fuel Services Corporation, Northwest Airlines Holding Corporation, NWA Inc., Northwest Aerospace Training Corp., Northwest Airlines, Inc., MLT Inc., Compass Airlines, Inc., Elite Northwest Airlines Cargo, Inc., NWA Retail Sales Inc., Montana Enterprises, Inc., NWTed Baggs LLC, Aircraft Foreign Sales, Inc., NWA Worldclub, Inc. and NWA Aircraft Finance, Inc.

[3] Normal business hours for BSI are from 9 a.m. to 4 p.m. (prevailing Eastern Time).

Bruce R. Zirinsky (BZ 2990)
Gregory M. Petrick (GP 2175)
CADWALADER, WICKERSHAM & TAFT LLP
Attorneys for Debtors and  Debtors In Possession
One World Financial Center
New York, New York  10281
Telephone:  (212) 504-6000
Facsimile:  (212) 504-6666

- and-

Mark C. Ellenberg (ME 6927)
CADWALADER, WICKERSHAM & TAFT LLP
1201 F Street N.W., Suite 1100
Washington, DC  20004
Telephone:  (202) 862-2200
Facsimile:  (202) 862-2400

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x

| | | |
|---|---|---|
| **In re:** | : | **Chapter 11** |
| | : | |
| **NORTHWEST AIRLINES CORPORATION**, <u>et al.</u>, | : | **Case No. 05-17930 (ALG)** |
| | : | |
| **Debtors.** | : | **Jointly Administered** |

---------------------------------------------------------------x

<u>**AFFIDAVIT OF PUBLICATION**</u>

<u>*/s/ Gregory M. Petrick*</u>
Bruce R. Zirinsky (BZ 2990)
Gregory M. Petrick (GP 2175)
CADWALADER, WICKERSHAM & TAFT LLP
One World Financial Center
New York, New York 10281
Telephone: (212) 504-6000
Facsimile:  (212) 504-6666

-and-

Mark C. Ellenberg (ME 6927)
CADWALADER, WICKERSHAM & TAFT LLP
1201 F Street, N.W., Suite 1100
Washington DC 20004
Telephone:  (202) 862-2200
Facsimile:  (202) 862-2400
Attorneys for the Debtors and Debtors-in-Possession

STATE OF TEXAS         )
                         ) ss:
CITY AND COUNTY OF DALLAS)

I, <u>Glenn Hellums Jr.</u>, being duly sworn, depose and say that I am the Advertising Clerk

of the Publisher of <u>THE WALL STREET JOURNAL</u> , a daily national newspaper

published and of general circulation in the City and County of New York, New York,

City of Naperville, DuPage County, Illinois, and in the city and County of Dallas, Texas

and that the attached Notice has been regularly published in <u>THE WALL STREET</u>

<u>JOURNAL</u> for national distribution for <u>one</u> insertion(s) on the following date(s): <u>3/9/07</u>

at the request of advertiser: <u>Northwest Airlines</u> and that the foregoing statements are true

and correct to the best of my knowledge, information, and belief.

<u>Glenn Hellums Jr.</u>

MITCHELL E. CHEATHAM
Notary Public, State of Texas
My Commission Expires
March 01, 2011

Sworn to before me this

9 day of March 2009

<u>Mitchell E. Cheatham</u>
Notary Public

EE MW SW WE

# BANKRUPTCIES

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Chapter 11 |
| NORTHWEST AIRLINES | Case No. 05-17930 (ALG) |
| CORPORATION, et al., | Jointly Administered |
| Debtors. | |

**NOTICE OF THE DEBTORS' CONSIDERATION OF POTENTIAL (A) UTILIZATION OF SECTION 382(L)(5) OF THE INTERNAL REVENUE CODE AND (B) REQUEST FOR ENTRY OF A SELL DOWN ORDER, AND TERMINATION OF THE ELECTING CLAIMHOLDER OPTION IN CONNECTION THEREWITH**

**TO ALL PERSONS OR ENTITIES WITH CLAIMS[1] AGAINST THE DEBTORS[2]:**

PLEASE TAKE NOTICE that, on September 14, 2005, Northwest Airlines Corporation ("NWA Corp.") and certain of its direct and indirect subsidiaries (collectively, the "Debtors"), commenced cases under chapter 11 of title 11 of the United States Code (as amended, the "Bankruptcy Code"). Subject to certain exceptions, Section 362 of the Bankruptcy Code operates as a stay of any act to obtain possession of property of the Debtors' estates or of property from the Debtors' estates or to exercise control over property of the Debtors' estates.

PLEASE TAKE FURTHER NOTICE that, on October 28, 2005, upon the Debtors' motion, the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") entered a Final Order Pursuant to Sections 105, 362 and 541 of the Bankruptcy Code and Bankruptcy Rule 3001 Establishing Notification And Hearing Procedures For Trading Claims and Equity Securities (the "Order"). Pursuant to the Order, any person or entity that elects to become an Electing Claimholder (as defined in the Order) may freely trade and make a market in Claims without the requirement of advance notice to, and approval by, the Debtors, provided that such Electing Claimholder agrees to comply with the requirements of a Sell Down Notice (as defined in Exhibit 2C of the Order) if issued by the Bankruptcy Court.

PLEASE TAKE FURTHER NOTICE that, pursuant to paragraph 6(d)(2) of the Order, the Debtors (i) are actively considering whether to utilize Section 382(l)(5) of the Internal Revenue Code; and (ii) may request, after notice and a hearing, the entry of an order by the Bankruptcy Court approving the issuance of a Sell Down Notice to insure that the requirements of Section 382(l)(5) are satisfied.

PLEASE TAKE FURTHER NOTICE that, in connection with the foregoing, the Debtors may request, after notice and a hearing, that the Bankruptcy Court amend the Order to eliminate the ability of Electing Claimholders, on or after the date of such amendment, to become Electing Claimholders in lieu of complying with the advance notice and consent procedures set forth in paragraphs 6(a)-(c) of the Order.

PLEASE TAKE FURTHER NOTICE that, upon the request of any person, Bankruptcy Services LLC ("BSI"), 757 Third Avenue, Third Floor, New York, New York 10017, tel (866) 715-0768, fax (646) 282-2501, will supply a copy of the Order or the Election Notice (at a cost to be paid by the person requesting such document(s), and at the prevailing fee being charged by BSI). BSI will accommodate document requests during normal business hours, Monday to Friday (excluding recognized holidays).[3]

Dated:    March 9, 2007

[1] References to "Claims" herein are made in accordance with the definition of a "claim" in Section 101(5) of the Bankruptcy Code and includes a lessor's right to any current or future payment under or arising out of any lease with respect to which a debtor or one or more of its debtor affiliates is a lessee.

[2] Specifically, in addition to NWA Corp., the Debtors consist of: NWA Fuel Services Corporation, Northwest Airlines Holdings Corporation, NWA Inc., Northwest Aerospace Training Corp., Northwest Airlines, Inc., MLT Inc., Compass Airlines, Inc. f/k/a Northwest Airlines Cargo, Inc., NWA Retail Sales Inc., Montana Enterprises, Inc., NW Red Baron LLC, Aircraft Foreign Sales, Inc., NWA Worldclub, Inc. and NWA Aircraft Finance Inc.

[3] Normal business hours for BSI are from 9 a.m. to 4 p.m. (prevailing Eastern Time).

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
In re:                                              :

                                                    :       Chapter 11

                                                    :

NORTHWEST AIRLINES CORPORATION, et al.,             :       Case No. 05-17930 (ALG)

                                                    :       (Jointly Administered)

                        Debtors.                    :

                                                    :
-------------------------------------------------------------------x

                                SUPPLEMENTAL AFFIDAVIT OF MAILING

STATE OF NEW YORK          )
                           ) ss.:
COUNTY OF NEW YORK         )

JULIA BEALLER, being duly sworn, deposes and says:

1.      I am over the age of eighteen years and employed by Bankruptcy Services LLC, 757 Third Avenue, New
        York, New York and I am not a party to the above-captioned action.

2.      At the request of the creditors listed below, I caused to be served true and correct copies of the "Disclosure
        Statement with Respect to Debtors' First Amended Joint and Consolidated Plan of Reorganization Under
        Chapter 11 of the Bankruptcy Code", [Docket No. 4902], dated February 15, 2007, to which is attached the
        "Debtors' First Amended Joint and Consolidated Plan of Reorganization Under Chapter 11 of the Bankruptcy
        Code", [Docket No. 4901] dated February 15, 2007, enclosed securely in separate postage pre-paid
        envelopes, to be delivered as follows:

                i)      by first class mail to Mark Francis, 16155 Gauntlet Court, Rosemount, MN 55068 on
                        March 1, 2007, and
                ii)     by first class mail to those parties listed on the annexed Exhibit "A" hereto on March
                        5, 2007.

3.      All items served by mail or overnight courier included the following legend affixed on the envelope:
        "LEGAL DOCUMENTS ENCLOSED: PLEASE DIRECT TO ATTENTION OF ADDRESSEE,
        PRESIDENT OR LEGAL DEPARTMENT."

                                                _____
                                                Julia Bealler

Sworn to before me this
2nd day of April, 2007

_____
Notary Public

            ROSS MATRAY
    Notary Public, State of New York
        No. 01MA614899
    Qualified in New York County
    Commission Expires July 3, 20 1

G:\JBealler\NWA\DS Request_Aff Mar 2007.doc

# Exhibit "A"

Joseph Allen
3300 NE 36th Street
Ft. Lauderdale, FL  33308

Ivan L. McKinney
331 Greenacres Blvd.
Bossier City, LA 71111

George Reynolds
2320 Chantel Drive
Alton, IL  62002

# EXHIBIT SEVEN

## U S B C - Southern District of New York
## Case No. 05-17930
### Findings of Fact, Conclusions of Law & Order

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

In re:

NORTHWEST AIRLINES CORPORATION,
NWA FUEL SERVICES CORPORATION,
NORTHWEST AIRLINES HOLDINGS CORPORATION,
NWA INC.,
NORTHWEST AEROSPACE TRAINING CORPORATION,
NORTHWEST AIRLINES, INC.,
NWA AIRCRAFT FINANCE, INC.,
MLT INC.,
COMPASS AIRLINES, INC. F/K/A NORTHWEST AIRLINES
CARGO, INC.,
NWA RETAIL SALES INC.,
MONTANA ENTERPRISES, INC.,
AIRCRAFT FOREIGN SALES, INC.,
NW RED BARON LLC, AND
NWA WORLDCLUB, INC.

                            Debtors.

------------------------------------------------------------x

Chapter 11

Case No. 05-17930 (ALG)

Jointly Administered

**FINDINGS OF FACT, CONCLUSIONS
OF LAW, AND ORDER UNDER 11 U.S.C. § 1129(a) AND
(b) AND FED. R. BANKR. P. 3020 CONFIRMING DEBTORS'
FIRST AMENDED JOINT AND CONSOLIDATED PLAN OF
REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

# TABLE OF CONTENTS

Page

INTRODUCTION .................................................................................................................1

DISCLOSURE STATEMENT AND SOLICITATION...........................................................2

PLAN CONFIRMATION ......................................................................................................5

FINDINGS OF FACT AND CONCLUSIONS OF LAW.......................................................6

(A)    Exclusive Jurisdiction; Venue; Core Proceeding (28 U.S.C. §§ 157(b)(2), 1334(a))..................................................................................................................6

(B)    Commencement and Joint Administration...........................................................6

(C)    Judicial Notice. ....................................................................................................7

(D)    Burden of Proof....................................................................................................7

(E)    Transmittal and Mailing of Materials; Notice. ...................................................7

(F)    Voting. ..................................................................................................................7

(G)    Classes deemed to have accepted the Plan. .........................................................7

(H)    Classes deemed to have rejected the Plan. ..........................................................8

(I)    Plan Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(1)). ...................8

(J)    Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1)). .....................................8

(K)    Specified Unimpaired Classes (11 U.S.C. § 1123(a)(2))....................................8

      (1)    Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)).........9

      (2)    No Discrimination (11 U.S.C. § 1123(a)(4)). .........................................9

      (3)    Implementation of Plan (11 U.S.C. § 1123(a)(5)). .................................9

      (4)    Non-Voting Equity Securities (11 U.S.C. § 1123(a)(6)). .....................10

      (5)    Designation of Directors (11 U.S.C. § 1123(a)(7)). .............................10

      (6)    Additional Plan Provisions (11 U.S.C. § 1123(b)). ..............................10

      (7)    Bankruptcy Rule 3016(a)........................................................................10

      (8)    Debtors' Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(2)). ..............10

(L)    Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3))....................................11

(M)    Payments for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)). ........11

(N)    Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5))...............................11

(O)    No Rate Changes (11 U.S.C. § 1129(a)(6)). ....................................................12

(P)    Best Interests of Creditors (11 U.S.C. § 1129(a)(7)). .......................................12

(Q)    Acceptance of Certain Classes (11 U.S.C. § 1129(a)(8)). ................................12

# TABLE OF CONTENTS
## (continued)

Page

(R)   Treatment of Administrative, Priority Tax and Priority Non-Tax Claims
      (11 U.S.C. § 1129(a)(9)). ...........................................................................13

(S)   Acceptance By Impaired Classes (11 U.S.C. § 1129(a)(10)). ..........................14

(T)   Feasibility (11 U.S.C. § 1129(a)(11)). .........................................................14

(U)   Payment of Fees (11 U.S.C. § 1129(a)(12)). .................................................14

(V)   Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13)). ..........................14

(W)   Fair and Equitable; No Unfair Discrimination (11 U.S.C. § 1129(b)). .............15

(X)   Principal Purpose of the Plan (11 U.S.C. § 1129(d)). .....................................15

(Y)   Modifications to the Plan. ..........................................................................15

(Z)   Good Faith Solicitation (11 U.S.C. § 1125(e)). .............................................15

(AA)  Assumption and Rejection. .........................................................................16

(BB)  Valuation. .................................................................................................16

(CC)  Cramdown. ................................................................................................17

(DD)  Satisfaction of Confirmation Requirements. .................................................17

(EE)  Retention of Jurisdiction. ............................................................................17

DECREES .............................................................................................................17

1.    Confirmation. ............................................................................................17

2.    Amendments. .............................................................................................18

3.    Objections. ................................................................................................18

4.    Plan Classification Controlling. ..................................................................18

5.    Substantive Consolidation. .........................................................................18

6.    Binding Effect. ..........................................................................................19

7.    Vesting of Assets (11 U.S.C. § 1141(b) and (c)). ..........................................20

8.    Merger, Dissolution, or Consolidation of Corporate Entities. .........................20

9.    Objection to Claims. ...................................................................................21

10.   Disputed Claims. ........................................................................................21

11.   Convenience Class Election. ........................................................................22

12.   Assumption or Rejection of Executory Contracts and Unexpired Leases
      (11 U.S.C. § 1123(b)(2)). ...........................................................................22

**TABLE OF CONTENTS**
**(continued)**

Page

13.  Cure of Defaults. ........................................................................................................23

14.  Bar Date for Rejection Damage Claims. .....................................................................23

15.  General Authorizations. ..............................................................................................24

16.  Authorization in Connection with Exit Facility. ........................................................24

17.  Authorization and Assumption in Connection with Rights Offering. ........................26

18.  Corporate Action. .......................................................................................................27

19.  New Board. .................................................................................................................28

20.  Issuance of New Securities. .......................................................................................28

21.  Securities Laws Exemption. .......................................................................................28

22.  Restrictions on the Transfer of New Common Stock to Protect NOLs. .....................28

23.  Management Equity Plan and Non-Contract Employee Compensation Program. ......30

24.  Plan Supplements. ......................................................................................................30

25.  Governmental Approvals Not Required. .....................................................................30

26.  Exemption From Certain Taxes. ................................................................................31

27.  Distributions. ..............................................................................................................31

28.  Final Fee Applications/Administrative Expense Claims. ...........................................33

29.  Discharge of Claims and Termination of Equity Interests. ........................................34

30.  Discharge of Debtors. .................................................................................................34

31.  Indenture Trustees' Fees and Expenses. .....................................................................35

32.  Survival of Corporate Indemnitees. ...........................................................................35

33.  Releases, Exculpations, and Injunctions. ...................................................................35

34.  Termination of Injunctions and Automatic Stay. .......................................................36

35.  Injunction Against Interference with the Plan. ...........................................................36

36.  Cancellation of Existing Securities and Agreements. ................................................36

37.  Dissolution of Committees; Post-Effective Date Committee. ....................................37

38.  Government Penalty Claims. .......................................................................................38

39.  Trust Fund Claims. .....................................................................................................38

40.  Aircraft Secured Claims. ............................................................................................39

41.  Insurance Agreements. ...............................................................................................39

**TABLE OF CONTENTS**
**(continued)**

**Page**

42.    Multnomah County. ........................................................................................39

43.    Nonoccurrence of Effective Date........................................................................39

44.    Notice of Entry of Confirmation Order and Effective Date. ...........................40

45.    Authorization to File Conformed Plan..............................................................41

46.    Applicable Non-Bankruptcy Law. ....................................................................41

47.    Final Order. ..........................................................................................................41

48.    Severability. .........................................................................................................41

49.    Conflicts Between Order and Plan....................................................................41

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

In re:                                    :

                                          :

NORTHWEST AIRLINES CORPORATION,           :
NWA FUEL SERVICES CORPORATION,
NORTHWEST AIRLINES HOLDINGS CORPORATION,  :
NWA INC.,
NORTHWEST AEROSPACE TRAINING CORPORATION, :
NORTHWEST AIRLINES, INC.,
NWA AIRCRAFT FINANCE, INC.,               :
MLT INC.,
COMPASS AIRLINES, INC. F/K/A NORTHWEST AIRLINES  :
CARGO, INC.,
NWA RETAIL SALES INC.,                    :
MONTANA ENTERPRISES, INC.,
AIRCRAFT FOREIGN SALES, INC.,             :
NW RED BARON LLC, AND
NWA WORLDCLUB, INC.                       :

                                          :

                          Debtors.        :

                                          :

                                          :

------------------------------------------------------------x

**Chapter 11**

**Case No. 05-17930 (ALG)**

**Jointly Administered**

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER UNDER
11 U.S.C. § 1129(a) AND (b) AND FED. R. BANKR. P. 3020 CONFIRMING
DEBTORS' FIRST AMENDED JOINT AND CONSOLIDATED PLAN OF
REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

INTRODUCTION

Northwest Airlines Corporation ("NWA Corp.") and certain of its direct and

indirect subsidiaries, as debtors and debtors in possession ("Northwest" or the "Debtors")[1], in the

_____

[1]    In addition to NWA Corp., the Northwest Debtors consist of: NWA Fuel Services Corporation ("NFS"), Northwest Airlines Holdings Corporation ("Holdings"), NWA Inc. ("NWA Inc."), Northwest Aerospace Training Corp. ("NATCO"), Northwest Airlines, Inc. ("Northwest Airlines"), MLT Inc.

above-captioned chapter 11 cases (the "Chapter 11 Cases") have proposed the Debtors' Joint and Consolidated Plan Of Reorganization Under Chapter 11 of the Bankruptcy Code, dated as of January 12, 2007 (the "Initial Plan"), as modified by that certain Debtors' First Amended Joint and Consolidated Plan Of Reorganization Under Chapter 11 of the Bankruptcy Code, dated as of February 15, 2007, and as amended on March 30, 2007, and as further amended on May 15, a true and correct copy of which is annexed hereto as Exhibit "A" (as may be further amended, the "Plan").[2]

## DISCLOSURE STATEMENT AND SOLICITATION

After hearings held on March 26, 2007 and March 27, 2007 (together, the "Disclosure Statement Hearing"), the Disclosure Statement in support of the Plan, dated as of February 15, 2007 and amended as of March 30, 2007 (as transmitted to parties in interest, the "Disclosure Statement") was approved by an order of this Court, dated March 30, 2007, as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code (the "Disclosure Statement Approval Order").

On or before April 9, 2007, the Debtors mailed or caused to be mailed, by first class mail, the solicitation packages (the "Solicitation Packages") containing copies of, inter alia, (i) the Disclosure Statement Approval Order; (ii) a notice of the hearing scheduled for

---

("MLT"), Compass Airlines, Inc. f/k/a Northwest Airlines Cargo, Inc. ("Compass"), NWA Retail Sales Inc. ("NWA Retail"), Montana Enterprises, Inc. ("Montana"), NW Red Baron LLC ("Red Baron"), Aircraft Foreign Sales, Inc. ("Foreign Sales") NWA Worldclub, Inc. ("WorldClub") and NWA Aircraft Finance, Inc. ("Aircraft Finance"). The Consolidated Debtors are NWA Corp., Northwest Airlines, Holdings and NWA Inc.

[2]     Unless otherwise defined herein, capitalized terms used herein shall have the meanings ascribed to such terms in the Plan and/or the Disclosure Statement Approval Order (as defined herein). Any capitalized term not defined in the Plan, the Disclosure Statement Approval Order, or this Confirmation Order, but that is used in title 11 of the United States Code, as amended (the "Bankruptcy Code") or the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules.

confirmation of the Plan and objections thereto; (iii) the approved form of the Disclosure

Statement (together with the Plan annexed thereto as Exhibit "A,") in electronic format on a CD-

ROM; (iv) solely to holders of claims in Class 1D General Unsecured Claims, Class 2B General

Unsecured Claims, Class 3C General Unsecured Claims, Class 4B General Unsecured Claims,

Class 5B General Unsecured Claims, Class 6B General Unsecured Claims, Class 7B General

Unsecured Claims, Class 8B General Unsecured Claims, Class 9B General Unsecured Claims,

Class 10B General Unsecured Claims, Class 11B General Unsecured Claims and Class 1E

Convenience Class Claims, which Classes were entitled to vote to accept or reject the Plan (A)

an appropriate form of ballot and a ballot return envelope; and (B) letters from the Debtors and

the Creditors Committee, recommending acceptance of the Plan; and (v) solely to holders of

claims in Class 1D General Unsecured Claims entitled to participate in the rights offering

pursuant to the procedures established for such participation in the Disclosure Statement

Approval Order (A) a notice of the commencement of the rights offering; and (B) a subscription

form, together with appropriate instructions for the proper completion, due execution and timely

delivery of the subscription form, as well as instructions for the payment of the applicable

purchase price for that portion of the subscription rights that such holder may be entitled to

acquire, to (i) the parties in interest listed on the Master Service List as defined in the Notice

Order; (ii) attorneys for the Creditors Committee; (iii) the U.S. Trustee; (iv) attorneys for the

Retiree Committee; (v) attorneys for the Debtors' postpetition lenders; (vi) all persons or entities

that filed proofs of claim in an amount greater than zero, or on whose behalf proofs of claim

were filed, on or before the date of the Disclosure Statement and Confirmation Hearing Notice,

except to the extent that a claim was withdrawn or paid pursuant to, or expunged by, prior order

of the Bankruptcy Court; (vii) all persons or entities listed in the Debtors' schedules of assets and

liabilities dated May 1, 2006, or any amendment thereof (the "Schedules"), as holding liquidated,

noncontingent, and undisputed claims, in an amount greater than zero; (viii) the transfer agent(s)

and registered holders of any claims against the Debtors arising from public securities or Aircraft

Claims (defined below), (ix) all other parties in interest that have filed a request for notice

pursuant to Bankruptcy Rule 2002 in the Debtors' Chapter 11 Cases; (x) the SEC; (xi) the IRS;

(xii) the DOJ; (xiii) the PBGC; (xiv) any entity that has filed with the Court a notice of transfer

of a claim under Bankruptcy Rule 3001(e) prior to the Voting Record Date; (xv) all known

parties to executory contracts; and (xvi) any other known holders of claims against the Debtors,

provided that the Debtors were not required to serve the foregoing on any of the Debtors'

creditors whose claims will be paid in full prior to the effective date of the Plan.[3]

The Debtors filed the Affidavits Of Publication With Respect To The Notice Of

Confirmation Hearing And Objection Deadline With Respect To Debtors' Plan on May 3, 2007,

attesting to the publication of the Confirmation Hearing Notice in the following newspapers on

the following dates, (i) April 18, 2007, New York Times and (ii) April 5, 2007, Wall Street

Journal (Exhibit B hereto), in accordance with this Court's scheduling order dated February 15,

2007.

The Debtors filed the Certification Of Jane Sullivan Of Financial Balloting Group

LLC With Respect To The Tabulation Of Votes On The Debtors' Joint Plan Of Reorganization

Under Chapter 11 Of The Bankruptcy Code, sworn to on May 11, 2007 and amended on May 14,

2007 (the "Voting Certification") attesting and certifying the method and results of the ballot

tabulation for the Classes of Claims entitled to vote to accept or reject the Plan.

---

[3] The Debtors' Ballot Agent and Special Balloting Agent have filed affidavits of service at Docket Nos. 6240, 6244 and 6483(the "Solicitation Affidavits").

**PLAN CONFIRMATION**

The Debtors filed (i) a memorandum of law in support of confirmation of the Plan dated May 15, 2007 (the "Confirmation Memorandum") and (ii) the Plan Supplements dated April 17, 2007, April 23, 2007, April 27, 2007, May 2, 2007, May 4, 2007, May 14, 2007 and May 17, 2007 (as may be amended, the "Plan Supplements").[4]

The provisions of the Plan are amended to reflect the various amendments to the Plan all as set forth in the various modifications filed with this Court and stated by the Debtors on the record at the Confirmation Hearing.

The Plan is a separate plan for each Non-Consolidated Debtor's estate and a consolidated plan, solely for all purposes and actions associated with consummation of the Plan, including, without limitation, for purposes of voting and confirmation, for the Consolidated Debtors' estates. Accordingly, the provisions of the Plan, including without limitation the definitions and distributions to creditors and equity interest holders, shall apply to the respective assets of, claims against, and equity interests in, such Non-Consolidated-Debtor's separate estate and such Consolidated Debtors' separate estate.

Based upon the Bankruptcy Court's review of the Disclosure Statement, Plan, Plan Supplements, Voting Certification, Solicitation Affidavits, and Confirmation Memorandum; and upon (a) all the evidence proffered or adduced at, memoranda and Objections filed in connection with, and arguments of counsel made at, the Confirmation Hearing, and (b) the entire

---

[4] A conformed copy of the final versions of each of the Plan Supplements filed with this Court are attached hereto. Attached hereto as Exhibit "B" is the Management Equity Plan. Attached hereto as Exhibit "C" is the Amended Bylaws. Attached hereto as Exhibit "D" is the Amended Certificate of Incorporation. Attached hereto as Exhibit "E" is the stockholder rights plan. Attached hereto as Exhibit "F" is the Schedule of Rejected Contracts and Leases. Attached hereto as Exhibit "G" is the list of the new members of the board of directors.

record of these Chapter 11 Cases; and after due deliberation thereon and good cause appearing therefore,

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

IT IS HEREBY FOUND AND DETERMINED THAT:[5]

(A)    Exclusive Jurisdiction; Venue; Core Proceeding (28 U.S.C. §§ 157(b)(2), 1334(a)).  This Bankruptcy Court has jurisdiction over these cases pursuant to sections 157 and 1334 of title 28 of the United States Code.  Venue is proper pursuant to sections 1408 and 1409 of title 28 of the United States Code.  Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L), and this Bankruptcy Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

(B)    Commencement and Joint Administration.  On September 14, 2005, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.[6]  Each Debtor is continuing to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On September 14, 2005, the Court entered an order authorizing the joint administration of the Debtors' chapter 11 cases.  On September 30, 2005, the Office of the United States Trustee appointed a statutory committee of unsecured creditors.  On November 17, 2005, the Office of the United States Trustee appointed a statutory committee of retired employees.  On April 11, 2007, the Court appointed Richard Nevins as examiner for the limited purposes as set forth in the Court's Order dated March 30, 2007.  No trustee has been appointed.

---

[5]    Pursuant to Bankruptcy Rule 7052, findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.

[6]  Aircraft Finance filed its petition on September 30, 2005.

(C)    <u>Judicial Notice</u>.  This Bankruptcy Court takes judicial notice of the docket

of the Chapter 11 Cases maintained by the Clerk of the Bankruptcy Court and/or its duly-

appointed agent, including, without limitation, all pleadings and other documents filed, all orders

entered, and evidence and argument made, proffered, or adduced at the hearings held before the

Bankruptcy Court during the pendency of the Chapter 11 Cases, including, but not limited to, the

Disclosure Statement Hearing and the hearings on confirmation of the Plan.

(D)    <u>Burden of Proof</u>.  The Debtors have the burden of proving the elements of

sections 1129(a) and (b) of the Bankruptcy Code by a preponderance of evidence.

(E)    <u>Transmittal and Mailing of Materials; Notice</u>.  The Disclosure Statement,

the Plan, the Ballots or Notice of Non-Voting Status, and Subscription Forms, as the case may

be, the Disclosure Statement Approval Order, and the Confirmation Hearing Notice, which were

transmitted and served as set forth in the Solicitation Affidavits, were transmitted and served in

compliance with the Disclosure Statement Approval Order and the Bankruptcy Rules, and such

transmittal and service were adequate and sufficient, and no other or further notice is or shall be

required.

(F)    <u>Voting</u>.  Votes to accept and reject the Plan have been solicited and

tabulated fairly, in good faith, and in a manner consistent with the Bankruptcy Code, the

Bankruptcy Rules, the Disclosure Statement Approval Order, and industry practice.

(G)    <u>Classes deemed to have accepted the Plan</u>.  Classes 1A, 2A, 3A, 4A, 5A,

6A, 7A, 8A, 9A, 10A and 11A (Priority Non-Tax Claims Class), Class 1B-1 (1110(a) Aircraft

Secured Claims), Class 1B-2 (Restructured Aircraft Secured Claims), Class 1B-3 (N301US and

N303US Aircraft Secured Claims), Classes 1C and 3B (Other Secured Claims) and Classes 1G,

2D, 3E, 4D, 5C, 6D, 7C, 8C, 9D, 10C and 11D (Equity Interests in Debtors Other than NWA

Corp.) are unimpaired and are deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.

(H) <u>Classes deemed to have rejected the Plan.</u> Classes 1H (Preferred Stock Interests in NWA Corp.) and 1I (Common Stock Interests in NWA Corp.) will not receive any property under the Plan and therefore are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.

(I) <u>Plan Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(1)).</u> The Plan complies with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

(J) <u>Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1)).</u> In addition to the Administrative Expense Claims and Priority Tax Claims listed in Section 2 of the Plan, which need not be designated, the Plan designates 11 Classes of Claims and Equity Interests. Each Other Secured Claim shall be deemed to be separately classified in a subclass of Class 1C and 3C, respectively, and shall have all rights associated with separate classification under the Bankruptcy Code. The Claims and Equity Interests placed in each Class are substantially similar to other Claims and Equity Interests, as the case may be, in each such Class. Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims and Equity Interests created under the Plan, and such Classes do not unfairly discriminate between holders of Claims and Equity Interests. The Plan satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

(K) <u>Specified Unimpaired Classes (11 U.S.C. § 1123(a)(2)).</u> Section 4 of the Plan specifies that Classes 1A, 2A, 3A, 4A, 5A, 6A, 7A, 8A, 9A, 10A and 11A (Priority Non-Tax Claims Class), Class 1B-1 (1110(a) Aircraft Secured Claims), Class 1B-2 (Restructured Aircraft Secured Claims), Class 1B-3 (N301US and N303US Aircraft Secured Claims), Classes

1C and 3B (Other Secured Claims), Classes 1G, 2D, 3E, 4D, 5C, 6D, 7C, 8C, 9D, 10C and 11D (Equity Interests in Debtors Other than NWA Corp.) are unimpaired under the Plan, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

        (1)    <u>Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3))</u>. Section 4 of the Plan designates Class 1D General Unsecured Claims, Class 2B General Unsecured Claims, Class 3C General Unsecured Claims, Class 4B General Unsecured Claims, Class 5B General Unsecured Claims, Class 6B General Unsecured Claims, Class 7B General Unsecured Claims, Class 8B General Unsecured Claims, Class 9B General Unsecured Claims, Class 10B General Unsecured Claims, Class 11B General Unsecured Claims, Class 1E Convenience Class Claims, and Classes 1H and 1I as impaired and specifies the treatment of Claims and Equity Interests in those Classes, thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

        (2)    <u>No Discrimination (11 U.S.C. § 1123(a)(4))</u>. The Plan provides for the same treatment by the Debtors for each Claim or Equity Interest in each respective Class unless the holder of a particular Claim or Equity Interest has agreed to a less favorable treatment of such Claim or Equity Interest, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

        (3)    <u>Implementation of Plan (11 U.S.C. § 1123(a)(5))</u>. The Plan and the Plan Supplements provide adequate and proper means for the Plan's implementation, including, among other things, (i) the substantive consolidation of the Consolidated Debtors; (ii) the DIP Credit and Exit Facility Agreement; (iii) the issuance of New Common Stock; (iv) the Rights Offering and Purchased Shares; (v) the listing of the New Common Stock; (vi) the restriction on the transfer of New Common Stock to protect NOLs; (vii) the adoption and implementation of the Management Equity Plan; (viii) the adoption and implementation of the Non-Contract Employee Compensation Plan; (ix) the cancellation of existing securities,

instruments, and other documentation; (x) the payment of the fees of the Indenture Trustees; (xi) the selection of directors and officers for the Reorganized Debtors, as disclosed on the Debtors' website; (xii) the amendment of the certificates of incorporation, bylaws and similar reorganizational documents; and (xiii) to effectuate the Restructuring Transactions.

    (4) <u>Non-Voting Equity Securities (11 U.S.C. § 1123(a)(6))</u>. Section 5.16 of the Plan provides that the Amended Certificate of Incorporation and the certificate of incorporation for each of the Reorganized Debtors shall prohibit the issuance of nonvoting equity securities.  Thus, the requirements of section 1123(a)(6) of the Bankruptcy Code are satisfied.

    (5) <u>Designation of Directors (11 U.S.C. § 1123(a)(7))</u>.  Section 5.12 of the Plan and the Plan Supplements contain provisions with respect to the manner of selection of directors of the Reorganized Debtors that are consistent with the interests of creditors, equity security holders, and public policy in accordance with section 1123(a)(7).

    (6) <u>Additional Plan Provisions (11 U.S.C. § 1123(b))</u>.  The Plan's provisions are appropriate and not inconsistent with the applicable provisions of the Bankruptcy Code.

    (7) <u>Bankruptcy Rule 3016(a)</u>.  The Plan is dated and identifies the entities submitting it as the Debtors, thereby satisfying Bankruptcy Rule 3016(a).

    (8) <u>Debtors' Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(2))</u>.  The Debtors have complied with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(2) of the Bankruptcy Code.  Specifically:

    (i) The Debtors are proper debtors under section 109 of the Bankruptcy Code.

(ii)    The Debtors have complied with applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Bankruptcy Court.

(iii)    The Debtors have complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Disclosure Statement Approval Order in transmitting the Plan, the Disclosure Statement, the Ballots or Notice of Non-Voting Status, as the case may be, and related documents in soliciting and tabulating votes on the Plan.

(L)    <u>Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3))</u>.  For the reasons stated on the record of the hearing on May 18, 2007, the Debtors have proposed the Plan in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code.  The Debtors' good faith is evident from the facts and records of these Chapter 11 Cases, the Disclosure Statement and the hearings thereon, and the record of the Confirmation Hearing and other proceedings held in these Chapter 11 Cases.  The Plan was proposed with the legitimate and honest purpose of maximizing the value of the Debtors' estates and to effectuate a successful reorganization of the Debtors.

(M)    <u>Payments for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4))</u>.  For the reasons stated on the record of the hearing on May 18, 2007, any payment made or to be made by any of the Debtors for services or for costs and expenses in or in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, has been approved by, or is subject to the approval of, the Bankruptcy Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

(N)    <u>Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5))</u>.  For the reasons stated on the record of the hearing on May 18, 2007, the Plan proponents have complied with

section 1129(a)(5) of the Bankruptcy Code.  The identity and affiliations of the persons proposed

to serve as initial directors or officers of the Reorganized Debtors after confirmation of the Plan

have been fully disclosed in the Plan Supplements, and the appointment to, or continuance in,

such offices of such persons is consistent with the interests of holders of Claims against and

Equity Interests in the Debtors and with public policy.  The identity of any insider that will be

employed or retained by the Reorganized Debtors and the nature of such insider's compensation

have also been fully disclosed.

     (O)    No Rate Changes (11 U.S.C. § 1129(a)(6)).  Section 1129(a)(6) of the

Bankruptcy Code is satisfied because the Plan does not provide for any change in rates over

which a governmental regulatory commission has jurisdiction.

     (P)    Best Interests of Creditors (11 U.S.C. § 1129(a)(7)).  The Plan satisfies

section 1129(a)(7) of the Bankruptcy Code.  The liquidation analyses provided in the Disclosure

Statement, the Plan Supplements and other evidence proffered or adduced at the Confirmation

Hearing (a) are persuasive and credible, (b) have not been controverted by other evidence, and

(c) establish that each holder of an impaired Claim or Equity Interest either has accepted the Plan

or will receive or retain under the Plan, on account of such Claim or Equity Interest, property of

a value, as of the Effective Date, that is not less than the amount that such holder would receive

or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date.

     (Q)    Acceptance of Certain Classes (11 U.S.C. § 1129(a)(8)).  Classes 1A, 2A,

3A, 4A, 5A, 6A, 7A, 8A, 9A, 10A and 11A (Priority Non-Tax Claims Class), Class 1B-1

(1110(a) Aircraft Secured Claims), Class 1B-2 (Restructured Aircraft Secured Claims), Class

1B-3 (N301US and N303US Aircraft Secured Claims), Classes 1C and 3B (Other Secured

Claims) and Classes 1G, 2D, 3E, 4D, 5C, 6D, 7C, 8C, 9D, 10C and 11D (Equity Interests in

Debtors Other than NWA Corp.) of the Plan are Classes of unimpaired Claims that are

conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code

and the accepting Classes as set forth in the Voting Certification have voted to accept the Plan in

accordance with sections 1126(c) and (d) of the Bankruptcy Code (the "Accepting Classes") and

therefore satisfy section 1129(a)(8) of the Bankruptcy Code.  Section 1129(a)(8) has not been

satisfied with respect to (i) Classes 1H (Preferred Stock Interests in NWA Corp.) and 1I

(Common Stock Interests in NWA Corp.), which will not receive any property under the Plan

and, therefore, are deemed to have rejected the Plan pursuant to section 1126(g) of the

Bankruptcy Code, as set forth in the Voting Certification, (the "Rejecting Classes").  The Plan is

confirmable because the Plan satisfies section 1129(b) of the Bankruptcy Code with respect to

the Rejecting Classes, as described below

    (R) <u>Treatment of Administrative, Priority Tax and Priority Non-Tax Claims</u>

<u>(11 U.S.C. § 1129(a)(9))</u>.  The treatment of Administrative Expense Claims and Priority Non-

Tax Claims pursuant to Sections 2.1 and 4.1 of the Plan satisfies the requirements of

sections 1129(a)(9)(A) and (B) of the Bankruptcy Code, and the treatment of Priority Tax Claims

pursuant to Section 2.3 of the Plan satisfies the requirements of section 1129(a)(9)(C) of the

Bankruptcy Code.  Unless otherwise agreed with a holder of an Allowed Priority Tax Claim, the

Debtors, in their sole discretion, may choose whether Allowed Priority Tax Claims will be paid

in cash either: (1) in an aggregate amount equal to such Allowed Priority Tax Claim, together

with interest from the Effective Date at a fixed annual rate equal to five percent (5%) over a

period not exceeding six (6) years after the date of assessment of such Allowed Priority Tax

Claim; or (2) in full on, or as soon thereafter as is reasonably practicable, the later of the

Effective Date and the first Business Day after the date that is thirty (30) calendar days after the

date such Priority Tax Claim becomes an Allowed Priority Tax Claim.  The Debtors reserve the

right to prepay, without penalty, at any time under option (1) above.

(S)    Acceptance By Impaired Classes (11 U.S.C. § 1129(a)(10)).  At least one

Class of Claims against each of the Debtors that is impaired under the Plan has accepted the

Plan, determined without including any acceptance of the Plan by any insider, thus satisfying the

requirements of section 1129(a)(10) of the Bankruptcy Code.

(T)    Feasibility (11 U.S.C. § 1129(a)(11)).  The Disclosure Statement, Plan,

Plan Supplements, Voting Certification, Solicitation Affidavits, Confirmation Memorandum, and

all evidence proffered or adduced at the Confirmation Hearing (a) is persuasive and credible,

(b) has not been controverted by other evidence, and (c) establishes that confirmation of the Plan

is not likely to be followed by the liquidation or the need for further financial reorganization, of

the Reorganized Debtors, thus satisfying the requirements of section 1129(a)(11) of the

Bankruptcy Code.

(U)    Payment of Fees (11 U.S.C. § 1129(a)(12)).  All fees payable under

section 1930 of title 28, United States Code, as determined by the Bankruptcy Court on the

Confirmation Date, have been paid or will be paid, on and after the Effective Date, and thereafter

as may be required until entry of a final decree with respect to each of the Debtors, thus

satisfying the requirements of section 1129(a)(12) of the Bankruptcy Code.

(V)    Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13)).  Section 7.4 of

the Plan provides that, on and after the Effective Date, the Reorganized Debtors will continue to

timely pay without modification, all retiree benefits, as defined in section 1114 of the

Bankruptcy Code, except as modified by the Bankruptcy Court in its Order Pursuant To Federal

Rule Of Bankruptcy Procedure 9019 For Approval Of Compromise And Settlement Of

Application Pursuant To Section 1114 Of The Bankruptcy Code To Modify Retiree Benefits

(Docket No. 6419).  Thus, the requirements of section 1129(a)(13) of the Bankruptcy Code are

satisfied.

(W)    <u>Fair and Equitable; No Unfair Discrimination (11 U.S.C. § 1129(b))</u>.

Based upon the evidence proffered, adduced, or presented by the Debtors at the Confirmation

Hearing, the Plan does not discriminate unfairly and is fair and equitable with respect to the

Rejecting Classes as required by section 1129(b)(1) of the Bankruptcy Code.  Thus, the Plan may

be confirmed notwithstanding the Debtors' failure to satisfy section 1129(a)(8) of the

Bankruptcy Code.  Accordingly, upon confirmation and the occurrence of the Effective Date, the

Plan shall be binding upon the members of the Rejecting Classes.

(X)    <u>Principal Purpose of the Plan (11 U.S.C. § 1129(d))</u>.  The principal

purpose of the Plan is not the avoidance of taxes or the avoidance of the application of Section 5

of the Securities Act of 1933.

(Y)    <u>Modifications to the Plan</u>.  The modifications to the Plan as set forth in the

plan modifications filed with this Court and on the record at the Confirmation Hearing constitute

technical changes and/or changes with respect to particular Claims by agreement with holders of

such Claims, and do not materially adversely affect or change the treatment of any Claims or

Equity Interests.  Accordingly, pursuant to Bankruptcy Rule 3019, these modifications do not

require additional disclosure under section 1125 of the Bankruptcy Code or resolicitation of

votes under section 1126 of the Bankruptcy Code, nor do they require that holders of Claims or

Equity Interests be afforded an opportunity to change previously cast acceptances or rejections of

the Plan.

(Z)    <u>Good Faith Solicitation (11 U.S.C. § 1125(e))</u>.  Based on the record before

the Bankruptcy Court in these Chapter 11 Cases, the Debtors, the Released Parties, in each case

their directors, officers, employees, shareholders, members, agents, advisors, accountants,

investment bankers, consultants, attorneys, and other representatives have acted in "good faith"

within the meaning of section 1125(e) of the Bankruptcy Code in compliance with the applicable

provisions of the Bankruptcy Code and Bankruptcy Rules in connection with all their respective

activities relating to the solicitation of acceptances to the Plan and in connection with the Rights

Offering and their participation in the activities described in section 1125 of the Bankruptcy

Code, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and

the exculpation provisions set forth in Section 11.6 of the Plan.

      (AA)  <u>Assumption and Rejection</u>.  Section 8 of the Plan governing the

assumption and rejection of executory contracts and unexpired leases satisfies the requirements

of section 365(b) of the Bankruptcy Code.  Pursuant to Section 8.6 of the Plan, except to the

extent that different treatment has been agreed to by the non-Debtor party or parties to any

executory contract or unexpired lease to be assumed pursuant to Sections 8.1, 8.2, 8.3 and 8.4 of

the Plan, the Debtors shall, pursuant to the provisions of sections 1123(a)(5)(G) and 1123(b)(2)

of the Bankruptcy Code and consistent with the requirements of section 365 of the Bankruptcy

Code, within thirty (30) days after the Confirmation Date, file and serve a pleading with the

Bankruptcy Court listing the cure amounts of all executory contracts or unexpired leases to be

assumed.  The parties to such executory contracts or unexpired leases to be assumed by the

Debtors shall have fifteen (15) days from service to object to the cure amounts listed by the

Debtors.  If there are any objections filed, and not otherwise resolved, the Bankruptcy Court shall

hold a hearing; provide that the Reorganized Debtors, in their sole and absolute discretion, can

resolve disputes in the ordinary course of business without further Bankruptcy Court approval.

      (BB)  <u>Valuation</u>.  Pursuant to the Valuation set forth in the Disclosure Statement,

and as set forth at the Confirmation Hearing, the Debtors are insolvent at the Class 1D level of

priority, Class 1D Allowed General Unsecured Claims will not be paid in full and the enterprise

value of the Debtors is insufficient to support a distribution to holders of Subordinated Claims,

Class 1H (Preferred Stock Interests in NWA Corp.) and Class 1I (Common Stock Interests in

NWA Corp.).

     (CC)  <u>Cramdown</u>.  The Plan is fair and equitable, in that no holder that is junior

to the Equity Interests classified in the Rejecting Classes will receive or retain under the Plan on

account of such junior interest any property.  The Plan does not discriminate unfairly with

respect to any holders of Class 1I or 1H.  The legal rights of holders of Equity Interests in such

Classes are treated consistently with the treatment of other classes whose legal rights are

substantially similar, and such Equity Interest holders do not receive more than they legally are

entitled to receive for their Equity Interests.  Therefore, the Plan satisfies section 1129(b) of the

Bankruptcy Code.

     (DD)  <u>Satisfaction of Confirmation Requirements</u>.  The Plan satisfies the

requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

     (EE)  <u>Retention of Jurisdiction</u>.  The Bankruptcy Court may properly retain

jurisdiction over the matters set forth in Section 13 of the Plan and section 1142 of the

Bankruptcy Code.

<u>**DECREES**</u>

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND

DECREED THAT:

     1.  <u>Confirmation</u>.  The Plan, as amended and supplemented by the Plan

Supplements, is approved and confirmed under section 1129 of the Bankruptcy Code.

2. <u>Amendments</u>. The amendments of the Plan as reflected on the record at the Confirmation Hearing meet the requirements of sections 1127(a) and (c), such amendments do not adversely change the treatment of the Claim of any creditor or Equity Interest of any equity security holder within the meaning of Bankruptcy Rule 3019, and no further solicitation or voting is required.

3. <u>Objections</u>. All Objections that have not been withdrawn, waived, or settled, and all reservations of rights pertaining to confirmation of the Plan included therein, are overruled on the merits.

4. <u>Plan Classification Controlling</u>. The classifications of Claims and Equity Interests for purposes of the distributions to be made under the Plan shall be governed solely by the terms of the Plan. The classifications set forth on the Ballots tendered to or returned by the Debtors' creditors in connection with voting on the Plan (a) were set forth on the Ballots solely for purposes of voting to accept or reject the Plan, (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims and Equity Interests under the Plan for distribution purposes, and (c) shall not be binding on the Debtors or the Reorganized Debtors except for voting purposes.

5. <u>Substantive Consolidation</u>. For the reasons stated on the record of the hearing held on May 9, 2007, the Consolidated Debtors are substantively consolidated, for all purposes and actions associated with consummation of the Plan, including, without limitation, for purposes of voting and confirmation. On and after the Effective Date, (a) all assets and liabilities of the Consolidated Debtors shall be treated as though they were merged into the Northwest Airlines estate solely for purposes of the Plan, (b) no distributions shall be made under the Plan on account of Equity Interests between and among any of the Consolidated Debtors, (c) for all purposes associated with Confirmation, including, without limitation, for purposes of tallying

acceptances and rejections of the Plan, the estates of the Consolidated Debtors shall be deemed

to be one consolidated estate for Northwest Airlines, and (d) each and every Claim filed or to be

filed in the Chapter 11 Cases of the Consolidated Debtors, shall be deemed filed against the

Consolidated Debtors, and shall be Claims against and obligations of the Consolidated Debtors.

As a result of the consolidation, any guaranty by one or more Consolidated Debtors of the

obligations of another Consolidated Debtor will be eliminated except as it relates to guarantees

arising under the secured aircraft financings described in Section 2.2, Section 4.2, Section 4.3

and Section 4.4 of the Plan or any guarantees related to leases which are assumed, but, as

prescribed in Section 4 of the Plan, each holder of an Allowed Unsecured Claim against a

Consolidated Debtor who also has a guaranty from another Consolidated Debtor shall be

compensated for the elimination of the guaranty, as set forth in the Plan, such that the substantive

consolidation does not result in unfair treatment to creditors who relied on guarantees.

Substantive consolidation shall not affect: (a) the legal and organizational structure of the

Consolidated Debtors; (b) pre and post-Commencement Date guarantees, liens, and security

interests that are required to be maintained (i) pursuant to any Postpetition Aircraft Purchase and

Lease Obligation, (ii) under the Bankruptcy Code or in connection with contracts or leases that

were entered into during the Chapter 11 Cases or executory contracts or unexpired leases that

have been or will be assumed, or (iii) pursuant to the Plan; (c) Intercompany Claims and Equity

Interests between and among the Consolidated Debtors; and (d) distributions from any insurance

policies or proceeds of such policies.

      6.  <u>Binding Effect</u>.  The Plan and its provisions shall be binding upon the

Debtors, the Reorganized Debtors, the Disbursing Agent, the Committee, any entity acquiring or

receiving property or a distribution under the Plan, and any holder of a Claim against or Equity

Interest in the Debtors, including all governmental entities (including without limitation all

taxing authorities), whether or not the Claim or Equity Interest of such holder is impaired under the Plan, whether or not the Claim or Equity Interest is Allowed, and whether or not such holder or entity has accepted the Plan.

7.  Vesting of Assets (11 U.S.C. § 1141(b) and (c)).  Pursuant to Section 15.3 of the Plan, except as otherwise provided in the Plan, each Debtor will continue to exist after the Effective Date as a separate corporate entity, with all the powers of a corporation under applicable law and without prejudice to any right to alter or terminate such existence (whether by merger, dissolution, or otherwise) under applicable state law.  Pursuant to Section 11.1 of the Plan, except as otherwise expressly provided in the Plan, upon the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all property of the Debtors' bankruptcy estates and any property acquired by a Debtor or Reorganized Debtor under the Plan shall vest in the Reorganized Debtors free and clear of all Claims, liens, encumbrances, charges and other interests.  On and after the Effective Date, each Reorganized Debtor may operate its business and may use, acquire or dispose of property and compromise or settle any claims without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan or the Confirmation Order.  Without limiting the foregoing, each Reorganized Debtor may pay the charges that it incurs on or after the Effective Date for professionals' fees, disbursements, expenses or related support services (including fees relating to the preparation of professional fee applications) without application to, or approval of, the Bankruptcy Court.

8.  Merger, Dissolution, or Consolidation of Corporate Entities.  In addition to the authority granted to the Debtors pursuant to Section 5.1 of the Plan with regard to substantive consolidation, pursuant to Section 5.15 of the Plan, on the Effective Date, but subsequent to the cancellation and discharge of all Claims, (i) Holdings will merge into NWA Inc., with NWA Inc.

being the surviving entity, and (ii) thereafter, NWA Inc. will merge into Northwest Airlines, with

Northwest Airlines being the surviving entity (the "Downstream Mergers"). In addition to the

Downstream Mergers, on or as of the Effective Date or as soon thereafter as practicable, within

the discretion of the Debtors, and without further motion to or order of the Bankruptcy Court, the

Debtors may, notwithstanding any other transactions described in Section 5.15 of the Plan,

(i) merge, dissolve, transfer assets, or otherwise consolidate any of the Debtors in furtherance of

the Plan or (ii) engage in any other transaction in furtherance of the Plan, in consultation with the

Post-Effective Date Committee; provided, however that the Debtors shall have no obligation to

consult with the Post-Effective Date Committee with respect to the Downstream Mergers. Any

such transaction may be effected on or subsequent to the Effective Date without any further

action by the stockholders or directors of any of the Debtors, or the Reorganized Debtors.

9.  Objection to Claims. The Debtors and the Reorganized Debtors shall be

entitled to object to Claims. Any objections to Claims shall be served and filed on or before one

hundred eighty (180) days after the Effective Date (unless such day is not a Business Day, in

which case such deadline shall be the next Business Day thereafter), as the same may be

extended from time to time by the Bankruptcy Court, with the consent of the Post-Effective Date

Committee, or as otherwise ordered by the Bankruptcy Court.

10.  Disputed Claims. Notwithstanding any other provision in the Plan if any

portion of a Claim is a Disputed Claim, no payment or distribution provided hereunder shall be

made on account of such Claim unless and until such Claim becomes an Allowed Claim that is

not a Disputed Claim. All prepetition Insured Claims not previously allowed by Final Order are

Disputed Claims. Any Insured Claim determined and liquidated shall be deemed a Claim against

the applicable Debtor in such liquidated amount and satisfied in accordance with the Plan

*provided, however,* that such claim shall be paid from the insurance proceeds available to satisfy

such liquidated amount.  Nothing contained in Section 7.2 of the Plan impairs the Debtors' and

the Reorganized Debtors' right to seek estimation of any and all claims in a court or courts of

competent jurisdiction or constitute or be deemed a waiver of any Claim, right or cause of action

that any Debtor may have against any person in connection with or arising out of any Insured

Claim.

      11. <u>Convenience Class Election</u>.  Notwithstanding any other provision in the Plan,

the Debtors may, in their sole and absolute discretion, allow a claimant to make the Convenience

Class Election after the time periods for such election set forth in the Plan.

      12. <u>Assumption or Rejection of Executory Contracts and Unexpired Leases</u>

<u>(11 U.S.C. § 1123(b)(2))</u>.  Except as otherwise provided for in the Plan, pursuant to Section 8.1

of the Plan, on the Effective Date, all executory contracts and unexpired leases to which any of

the Debtors are parties shall be deemed automatically assumed on the Effective Date except for

an executory contract or unexpired lease that (i) has already been assumed or rejected pursuant to

Final Order of the Bankruptcy Court, (ii) is specifically designated as a contract or lease to be

rejected on the Schedule of Rejected Contracts and Leases in the Plan Supplements, (iii) is the

subject of a separate motion to assume or reject filed under section 365 of the Bankruptcy Code

by the Debtors prior to the Confirmation Date, or (iv) is an option or warrant to purchase

common stock of any of the Debtors or right to convert any Equity Interest into common stock of

any of the Debtors or to the extent such option, warrant, or conversion right is determined not to

be an Equity Interest.  Notwithstanding anything in the foregoing to the contrary, with respect to

any contract or lease which is subject to litigation or proceeding in which the characterization of

an executory contract is an issue and that is pending as of the commencement of the

Confirmation Hearing, the Debtors shall have 30 days after the entry of a Final Order resolving

the litigation or proceeding to assume or reject such contract or lease.

13. Cure of Defaults.  Pursuant to Section 8.6 of the Plan, except to the extent that different treatment has been agreed to by the non-Debtor party or parties to any executory contract or unexpired lease to be assumed pursuant to Sections 8.1, 8.2, 8.3 and 8.4 hereof, the Debtors shall, pursuant to the provisions of sections 1123(a)(5)(G) and 1123(b)(2) of the Bankruptcy Code and consistent with the requirements of section 365 of the Bankruptcy Code, within thirty (30) days after the Confirmation Date, file and serve a pleading with the Bankruptcy Court listing the cure amounts of all executory contracts or unexpired leases to be assumed.  The parties to such executory contracts or unexpired leases to be assumed by the Debtor shall have fifteen (15) days from service to object to the cure amounts listed by the Debtors.  If there are any objections filed, and not otherwise resolved, the Bankruptcy Court shall hold a hearing.  Notwithstanding the foregoing, the Reorganized Debtors, in their sole and absolute discretion, may settle cure disputes in the ordinary course of business without further Bankruptcy Court approval.

14. Bar Date for Rejection Damage Claims.  Pursuant to Section 8.8 of the Plan, in the event that the rejection of an executory contract or unexpired lease by any of the Debtors pursuant to the Plan results in damages to the other party or parties to such contract or lease, a claim for such damages, if not heretofore evidenced by a filed proof of claim, shall be forever barred and shall not be enforceable against the Debtors, or their respective properties or interests in property as agents, successors or assigns, unless a proof of claim is filed with the Bankruptcy Court and served upon counsel for the Debtors on or before the first business day that is at least thirty (30) calendar days after service of notice of entry of this Confirmation Order and service of a separate notice referring to the rejection of the relevant contract or contracts and the deadline for filing proofs of claim.

15. General Authorizations. Each of the Debtors and the Reorganized Debtors are authorized to execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, including without limitation any notes or securities issued pursuant to the Plan. The Debtors and the Reorganized Debtors and their respective directors, officers, members, agents, and attorneys, are authorized and empowered to issue, execute, deliver, file, or record any agreement, document, or security, including, without limitation, the documents contained in the Plan Supplements, as modified, amended, and supplemented, in substantially the form included therein, and to take any action necessary or appropriate to implement, effectuate, and consummate the Plan in accordance with its terms, or take any or all corporate actions authorized to be taken pursuant to the Plan, and any release, amendment, or restatement of any bylaws, certificates of incorporation, or other organization documents of the Debtors, whether or not specifically referred to in the Plan or the Plan Supplements, without further order of the Court, and any or all such documents shall be accepted by each of the respective state filing offices and recorded in accordance with applicable state law and shall become effective in accordance with their terms and the provisions of state law.

16. Authorization in Connection with Exit Facility. Without limitation on the general authorizations provided for in this Order and the Plan, each of the Debtors and the Reorganized Debtors are authorized to take all actions necessary or desirable in furtherance of the consummation and implementation of the Exit Facility, including, without limitation, the granting of liens under the Exit Facility and the payment or reimbursement of any fees, expenses, losses, damages, or indemnities. Notwithstanding anything that may be contained herein to the contrary, on the Effective Date, the applicable Debtors shall convert the DIP Credit and Exit

Facility Agreement into the Exit Facility. The Reorganized Debtors will assume the DIP Claim

and all of the obligations of the Debtors under the DIP Credit and Exit Facility Agreement and

other related agreements, documents, or instruments executed or delivered in connection

therewith and perform their obligations thereunder, including, without limitation, the payment or

reimbursement of any fees, expenses, losses, damages, or indemnities. The Exit Facility may be

used for any purpose permitted by the Exit Facility, including the funding of obligations under

the Plan, such as the payment of Administrative Expense Claims and the satisfaction of ongoing

working capital requirements. All documents related to the Exit Facility (the "Exit Facility

Documents") shall constitute the legal, valid and binding obligations of the Reorganized Debtors

parties thereto, enforceable in accordance with their respective terms. Notwithstanding anything

in the Final Order Authorizing Debtors to Obtain Secured Post-Petition Financing on a Super-

Priority Basis Pursuant to 11 U.S.C. §§ 105, 362, 363, 364 and 507(b) (the "DIP Order") to the

contrary, the liens and security interests granted under the DIP Order shall not be altered,

amended, or discharged by this Confirmation Order and shall be, and shall remain, legal, valid,

and binding liens on, and security interests in, the property and assets of the Reorganized

Debtors in which the Administrative Agent (defined below) was granted a lien or interest

pursuant to the DIP Order and having the priority granted to them in the DIP Order from and

after the date hereof through and including the date upon which all of the obligations under the

Exit Facility Documents are paid in full in cash (other than unasserted contingent obligations, if

any) and the commitments under the Exit Facility are terminated (the "Exit Facility Termination

Date"). On the Exit Facility Termination Date, the liens and security interests granted under the

DIP Order shall automatically terminate and be released, in each case without any further action

by any of the Reorganized Debtors, the Administrative Agent or any of the Lenders (defined

below) or any further order of this Court.

Citicorp USA, Inc., as Administrative Agent for the Exit Facility (the "Administrative Agent") and the several banks and other financial institutions or entities from time to time parties to the DIP Credit and Exit Facility Agreement and each of their respective affiliates, officers, directors, agents, employees, advisors, lawyers, accountants, successors and assigns (the "Lenders"), shall be released by each Debtor and Reorganized Debtor from any and all claims (as defined in section 101(5) of the Bankruptcy Code), obligations, suits, demands, actions, proceedings, sums of money, judgments, damages, rights, causes of action and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, that any Debtor or Reorganized Debtor is entitled to assert in its own right or on behalf of the holder of any Claim or Equity Interest or other Person, based in whole or in part upon any act or omission, transaction, agreement, event or occurrence taking place on or prior to the Effective Date in any way relating to any Debtor, any Reorganized Debtor, the DIP Credit and Exit Facility Agreement or the other documents related thereto, the Chapter 11 Cases, the formulation, preparation, negotiation, dissemination, implementation, administration, confirmation or consummation of any of the Plan, or the property to be distributed under the Plan, the disclosure statement concerning the Plan, any contract, employee pension or other benefit plan, instrument, release or other agreement or document created, modified, amended, terminated or entered into in connection with either the Plan or any agreement between the Debtors, the Administrative Agent, the Lenders or any Released Party, or any other act taken or omitted to be taken in connection with the Debtors' bankruptcy, except for claims or causes of actions against any Administrative Agent or any of the Lenders resulting from the willful misconduct or gross negligence of the Administrative Agent or the Lenders.

17. <u>Authorization and Assumption in Connection with Rights Offering</u>.  Without limitation on the general authorizations provided for in this Order and the Plan, each of the

Debtors and the Reorganized Debtors are authorized to take all actions necessary or desirable in furtherance of the consummation and implementation of the Rights Offering.  On the Effective Date, all obligations of NWA Corp. and Northwest Airlines under the Rights Offering Sponsor Agreement and the registration rights agreement entered into in connection therewith will survive, be deemed to be assumed and will be obligations of Reorganized NWA Corp. and Reorganized Northwest Airlines (and their respective successors).

18. <u>Corporate Action</u>.  The Reorganized Debtors shall file an Amended Certificate of Incorporation with the Office of the Secretary of State for the applicable State on the Effective Date or as soon as reasonably practicable thereafter.  The Amended Certificate of Incorporation shall prohibit the issuance of nonvoting equity securities, subject to further amendment of such certificates of incorporation as permitted by applicable law; and the Plan provides that the certificates of incorporation for each of the Reorganized Debtors that are corporations shall be deemed, without further action, to be amended to include a provision prohibiting the issuance of nonvoting equity securities to the extent required by section 1123(a)(6) of the Bankruptcy Code.  The Amended Bylaws have been adopted by the board of directors of the Reorganized Debtors; provided that the Amended Bylaws shall only be effective as of the Effective Date.  The stockholder rights plan has been adopted by the board of directors of the Reorganized Debtors; provided that the stockholder rights plan shall only be effective as of the Effective Date.  Each of the Amended Certificate of Incorporation, the Amended Bylaws, and the stockholder rights plan included in the Plan Supplements are hereby approved.  Consistent with its disclosure in the Plan Supplements, Reorganized NWA Corp. will hold its first annual meeting in April, 2008.

19. <u>New Board</u>.  Upon the occurrence of the Effective Date, the Persons proposed to serve as members of the Board of Directors, as identified in the Plan Supplements filed on April 23, 2007, shall automatically constitute the new Board of Directors.

20. <u>Issuance of New Securities</u>.  Pursuant to Section 5.3 of the Plan, based upon the record of the Chapter 11 Cases, the issuance of the New Common Stock by Reorganized NWA Corp., including the issuance of the New Common Stock pursuant to the Rights Offering and the Order of this Court dated March 30, 2007 (Docket No. 5371) is hereby authorized without the need for any further corporate action.

21. <u>Securities Laws Exemption</u>.  The Rights Offering and the offering, issuance, and distribution by Reorganized NWA Corp. of the New Common Stock, including the New Common Stock issued in connection with the Rights Offering, is exempt from the provisions of section 5 of the Securities Act of 1933, as amended, and any state or local law requiring registration for the offer, issuance, distribution, or sale of a security by reason of and to the extent provided by section 1145 of the Bankruptcy Code.

22. <u>Restrictions on the Transfer of New Common Stock to Protect NOLs</u>.  To reduce the risk of adverse federal income tax consequences after the Effective Date resulting from an ownership change (as defined in section 382 of the Internal Revenue Code), the Amended Certificate of Incorporation will restrict certain transfers of the New Common Stock without the consent of the Board for 2 years after the Effective Date, and such restrictions thereafter can be extended for one year periods (up to 3 times to June 2012) upon, each time, the affirmative vote of NWA Corp.'s stockholders.  In the event that these restrictions are extended beyond the two year period, the Board of Directors will approve subsequent proposed transfers that, taking into account all prior transfers effected during the "testing period" under section 382, do not result in an aggregate owner shift of more than 30% for purposes of section 382 (the

"Threshold Amount"). If the aggregate owner shift as of any date after the two year period exceeds the Threshold Amount, the Board of Directors has the discretion to approve any subsequent transfers subject to the standards that would otherwise apply until the earlier of the date on which the aggregate owner shift no longer exceeds the Threshold Amount, or the Restriction Release Date (as defined in the Amended Certificate of Incorporation). These restrictions generally will provide that any attempted transfer of New Common Stock prior to the expiration of the term of the transfer restrictions will be prohibited and void if such transfer would cause the transferee's ownership interest in Reorganized NWA Corp., as determined for the purposes of section 382 of the Internal Revenue Code, to increase to 4.95% or above, including an increase in a transferee's ownership interest from 4.95% or above to a greater ownership interest, except as may be otherwise agreed to by the Board of Directors of Reorganized NWA Corp. or required by law with respect to certain qualified plans. Absent a contrary decision by the Debtors, in consultation with the Creditors Committee, the Amended Certificate of Incorporation will also contain similar provisions restricting the ability of persons who are 5% shareholders for the purposes of section 382 of the Internal Revenue Code to dispose of their shares without the consent of the Board of Directors of Reorganized NWA Corp. during the term of the transfer restrictions. The transfer restrictions will not apply (x) to certain transactions approved by the Board of Directors of Reorganized NWA Corp., including, but not limited to, a merger or consolidation, in which all holders of New Common Stock receive, or are offered the same opportunity to receive, cash or other consideration for all such New Common Stock, and upon the consummation of which the acquirer will own at least a majority of the outstanding shares of New Common Stock; and (y) to the extent set forth in the Rights Offering Sponsor Agreement, to the Rights Offering Sponsor or Ultimate Purchasers.

23. Management Equity Plan and Non-Contract Employee Compensation
Program. Entry of this Confirmation Order constitutes the approval of the Management Equity
Plan and Non-Contract Employee Compensation Program, each of which shall be deemed
adopted by the Reorganized Debtors and effective as of the Effective Date.    The Debtors are
authorized to implement the Management Equity Plan and the Non-Contract Employee
Compensation Program without the necessity of shareholder approval required under any
applicable law, including, without limitation, Sections 162(m) and 422(b)(1) of the Internal
Revenue Code. The solicitation of votes on the Plan includes and is deemed to be a solicitation
of the holders of New Common Stock for approval of each of the Management Equity Plan and
Non-Contract Employee Compensation Program.

24. Plan Supplements. The documents contained in the Plan Supplements and
any amendments, modifications, and supplements thereto (to the extent consistent with the terms
of the Plan as the Debtors may approve), and the execution, delivery, and performance thereof by
the Reorganized Debtors, are authorized and approved, including, but not limited to, (i) the
Management Equity Plan, (ii) the Amended Certificate of Incorporation, (iii) the Amended
Bylaws, (iv) the list of the Board of Directors, (v) the stockholder rights plan; and (vi) the
Schedule of Rejected Contracts and Leases. Without need for further order or authorization of
the Bankruptcy Court, the Debtors and Reorganized Debtors are authorized and empowered to
make any and all modifications to any and all documents included as part of the Plan
Supplements that do not materially modify the terms of such documents and are consistent with
the Plan (subject to the terms of such documents, applicable law, and approval of the Creditors
Committee or Post-Effective Date Committee, as applicable).

25. Governmental Approvals Not Required. This Confirmation Order shall
constitute all approvals and consents required, if any, by the laws, rules, or regulations of any

state or any other governmental authority with respect to the implementation or consummation of

the Plan and any documents, instruments, or agreements, and any amendments or modifications

thereto, and any other acts referred to in or contemplated by the Plan, the Disclosure Statement,

and any documents, instruments, or agreements, and any amendments or modifications thereto.

26. <u>Exemption From Certain Taxes</u>.  Pursuant to section 1146(c) of the

Bankruptcy Code, the issuance, transfer, or exchange of notes or equity securities under the Plan,

the creation of any mortgage, deed of trust, or other security interest, the making or assignment

of any lease or sublease, or the making or delivery of any deed or other instrument of transfer

under, in furtherance of, or in connection with the Plan, including, without limitation, any merger

agreements or agreements of consolidation, deeds, bills of sale, or assignments executed in

connection with any of the transactions contemplated under the Plan, shall not be subject to any

stamp, real estate transfer, mortgage recording, or other similar tax.  All sale transactions

consummated by the Debtors and approved by the Bankruptcy Court on and after the

Commencement Date through and including the Effective Date, including, without limitation, the

transfers effectuated under the Plan, the Restructuring Transactions, the sale by the Debtors of

owned property pursuant to section 363(b) of the Bankruptcy Code, and the abandonment by the

Debtors of owned property pursuant to section 554 of the Bankruptcy Code, shall be deemed to

have been made under, in furtherance of, or in connection with the Plan and, thus, shall not be

subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

27. <u>Distributions</u>.  Except as otherwise provided in Section 6.7 of the Plan,

pursuant to Sections 6.4 and 6.5 of the Plan, on the Effective Date or as soon thereafter as is

practicable, the Disbursing Agent will distribute to the applicable agent and/or recordholder for

the individual holders of the applicable Allowed Claims the New Common Stock For

Distribution to Creditors allocable to Class 1D, the New Common Stock For Distribution to

Creditors with a Guaranty allocable to Class 1D and the New Common Stock For Distribution Pursuant to Rights Offering purchased pursuant to the exercise of Subscription Rights. For the purpose of calculating the amount of New Common Stock For Distribution to Creditors and New Common Stock For Distribution to Creditors with a Guaranty to be initially distributed to holders of Allowed Claims in Class 1D all Disputed Claims (excluding Subordinated Claims) in such class will be treated as though such Claims will be Allowed Claims in the amounts asserted, or as estimated by the Bankruptcy Court, or in accordance with any cap on the aggregate amount of Allowed and Disputed Claims in Class 1D used to calculate the amount of New Common Stock in the Distribution Reserve, including as such may be set pursuant to the Debtors' Motion for an Order Establishing a Distribution Reserve Amount in Connection with Confirmation of the Debtors' First Amended Joint and Consolidated Plan of Reorganization, as applicable. If, prior to a Periodic Distribution Date, a Disputed Claim is allowed as provided for under the Plan in an amount that is less than the amount utilized by the Disbursing Agent, the excess New Common Stock for Distribution to Creditors and New Common Stock For Distribution to Creditors with a Guaranty that was reserved by the Debtors on account of such Claim will be distributed to holders of Allowed Class 1D Claims on a Pro Rata basis on a subsequent Periodic Distribution Date as described in Section 6.5 of the Plan. If a Disputed Claim is disallowed subsequent to the Effective Date, then the creditors within the class will receive Pro Rata, on a subsequent Periodic Distribution Date, the Catch-up Distribution that the holder of the Disputed Claim would have received if the claim had become an Allowed Claim. On the applicable Periodic Distribution Date, the Disbursing Agent will distribute to the applicable agent and/or recordholder for the individual holders of the applicable Allowed Claims, the New Common Stock For Distribution to Creditors allocable to Class 1D and the New Common Stock For Distribution to Creditors with a Guaranty allocable to Class 1D until such time as all Disputed Claims have been resolved;

*provided, however*, if the initial Effective Date distribution falls within the first 45 days of a

quarter, then the first post-Effective Date Periodic Distribution Date will be on the first Business

Day following the close of such quarter.  On an applicable Periodic Distribution Date, as

determined by the Debtors, a holder of an Allowed Claim that ceased being a Disputed Claim

subsequent to the Effective Date will receive a Catch-up Distribution.  The Disbursing Agent

may, in its sole discretion, establish a record date prior to each Periodic Distribution Date, such

that only Claims Allowed as of the record date will participate in the distribution.

Notwithstanding the foregoing, the Debtors reserve the right, in consultation with the Post-

Effective Date Committee, to the extent they determine a distribution on any Periodic

Distribution Date is uneconomical or unfeasible, or is otherwise unadvisable, to postpone a

quarterly distribution until the next appropriate Periodic Distribution Date.

       28. <u>Final Fee Applications/Administrative Expense Claims</u>.  Pursuant to

Section 2.1 of the Plan, except with respect to Excluded Allowed Administrative Expense

Claims (as provided in Section 2.1 of the Plan), all entities seeking an award by the Bankruptcy

Court of compensation for services rendered or reimbursement of expenses incurred through and

including the Confirmation Date under section 503(b)(2), 503(b)(3), 503(b)(4) or 503(b)(5) of

the Bankruptcy Code and all parties seeking payment of an Administrative Expense Claim shall

file their respective final applications for allowance of compensation for services rendered and

reimbursement of expenses incurred and requests for payment of their Administrative Expense

Claim by the date that is sixty (60) days after the Effective Date.  The Reorganized Debtors, in

their sole and absolute discretion, may settle Administrative Expense Claims in the ordinary

course of business without further Bankruptcy Court approval.  The Debtors shall have the right

to object to any Administrative Expense Claim within 180 days after the Claims Objection

Deadline, subject to extensions from time to time by the Bankruptcy Court, with the consent of

the Post-Effective Date Committee.  Unless the Debtors or the Reorganized Debtors object to a

timely-filed and properly served Administrative Expense Claim, such Administrative Expense

Claim shall be deemed allowed in the amount requested.  In the event that the Debtors or the

Reorganized Debtors object to an Administrative Expense Claim the parties may confer to try to

reach a settlement and, failing that, the Bankruptcy Court shall determine whether such

Administrative Expense Claim should be allowed and, if so, in what amount.

   29.  <u>Discharge of Claims and Termination of Equity Interests</u>.  Pursuant to

Section 11.2 of the Plan, except as otherwise provided in the Plan or the Confirmation Order, the

rights afforded in the Plan and the payments and distributions to be made under the Plan shall be

in complete satisfaction of and shall discharge and terminate all Equity Interests in NWA Corp.

and all existing debts and Claims, of any kind, nature or description whatsoever against or in the

Debtors or any of their assets or properties to the fullest extent permitted by section 1141 of the

Bankruptcy Code.

   30.  <u>Discharge of Debtors</u>.  Pursuant to Section 11.2 of the Plan, except as

provided in the Plan, on the Effective Date, all existing Equity Interests in NWA Corp. and

Claims against the Debtors, including Intercompany Claims, shall be, and shall be deemed to be,

satisfied, discharged and terminated, and all holders of Equity Interests in NWA Corp. and

Claims against any of the Debtors shall be precluded and enjoined from asserting against the

Reorganized Debtors, or any of their assets or properties, any other or further Equity Interest in

NWA Corp. or Claim against any of the Debtors based upon any act or omission, transaction or

other activity of any kind or nature that occurred prior to the Effective Date, whether or not such

holder has filed a proof of claim or proof of equity interest.  Notwithstanding any provision of

the Plan to the contrary, any valid setoff or recoupment rights held against any of the Debtors,

shall not be affected by the Plan and are expressly preserved by this Confirmation Order.  The

discharge and injunction provisions set forth in Section 11.2 of the Plan and any similar

provisions in the Plan or Confirmation Order are not intended and shall not be construed to bar

the United States from, subsequent to the Confirmation Date, pursuing any police or regulatory

action to the extent excepted from the automatic stay provisions of section 362 of the Bankruptcy

Code, and nothing in the Plan limits or expands the discharge and injunction to which the

Debtors or Reorganized Debtors are entitled under the Bankruptcy Code or other applicable law.

31. <u>Indenture Trustees' Fees and Expenses</u>.  Pursuant to Section 5.11 of the Plan,

the Debtors shall pay the reasonable fees and expenses under the Indentures in Cash on the

Effective Date, as agreed to by the parties or as otherwise ordered by the Bankruptcy Court,

subject to each Indenture Trustee's reservation of their rights under applicable law to maintain

any rights or liens it may have for fees, costs and expenses under the Indentures.

32. <u>Survival of Corporate Indemnitees</u>.  Pursuant to Section 8.9 of the Plan, any

obligations of the Debtors pursuant to their corporate charters and bylaws or agreements entered

into any time prior to the Effective Date, to indemnify past and current directors, officers, agents,

trustees of employee benefit plans and/or employees with respect to all present and future

actions, suits, and proceedings against the Debtors or such directors, officers, agents, trustees of

employee benefit plans, and/or employees, based upon any act or omission by such individuals

shall not be discharged or impaired by confirmation of the Plan.  Such obligations shall be

deemed and treated as executory contracts to be assumed by the Debtors pursuant to the Plan and

shall continue as obligations of the Reorganized Debtors.

33. <u>Releases, Exculpations, and Injunctions</u>.  The release, exculpation, and

injunction provisions contained in the Plan are fair and equitable, are given for valuable

consideration, and are in the best interests of the Debtors and their chapter 11 estates, and such

provisions shall be effective and binding upon all persons and entities; provided that the release,

exculpation and injunction provisions of the Plan and any similar provisions in the Plan or

Confirmation Order are not intended and shall not be construed to bar the United States from,

subsequent to the Confirmation Date, pursuing any police or regulatory action to the extent

excepted from the automatic stay provisions of section 362 of the Bankruptcy Code.

34. Termination of Injunctions and Automatic Stay.  Pursuant to Section 11.4 of

the Plan, unless otherwise provided in the Plan, all injunctions or stays arising under section 105

or 362 of the Bankruptcy Code, any order entered during the Chapter 11 Cases under section 105

or 362 of the Bankruptcy Code or otherwise, and in existence on the Confirmation Date, shall

remain in full force and effect until the later of the Effective Date and the date indicated in such

order.

35. Injunction Against Interference with the Plan.  Pursuant to Section 11.5 of the

Plan, upon the entry of the Confirmation Order with respect to the Plan, all holders of Claims

and Equity Interests and other parties in interest, along with their respective present or former

employees, agents, officers, directors or principals, shall be enjoined from taking any actions to

interfere with the implementation or consummation of the Plan.

36. Cancellation of Existing Securities and Agreements.  Except as otherwise

expressly provided for in the Plan and pursuant to Section 6.9 of the Plan, as a condition to

receiving any distribution under the Plan, each holder of a certificated instrument or note must

surrender such instrument or note held by it to the Disbursing Agent or its designee, unless such

certificated instrument or note is being reinstated or is unimpaired under the Plan.  Any holder of

such instrument or note that fails to (i) surrender such instrument or note, or (ii) execute and

deliver an affidavit of loss and/or indemnity reasonably satisfactory to the Disbursing Agent and

furnish a bond in form, substance and amount reasonably satisfactory to the Disbursing Agent

before the first anniversary of the Effective Date, shall be deemed to have forfeited all rights and

Claims and may not participate in any distribution under the Plan. Any distribution so forfeited shall be distributed pro rata to the members of the Class. Except as otherwise required by the terms of the applicable transaction documents, the provisions of this Section shall not apply to notes or instruments issued by parties that are not Debtors.

      37. <u>Dissolution of Committees; Post-Effective Date Committee</u>. Effective on the Effective Date, the Creditors' Committee, the Retiree Committee and any other statutory committee appointed in the Chapter 11 Cases shall dissolve automatically, whereupon its members, professionals, and agents shall be released from any further duties and responsibilities in the Chapter 11 Cases and under the Bankruptcy Code, except with respect to applications for Professional Claims or reimbursement of expenses incurred as a member of the Creditors' Committee or the Retiree Committee, and any motions or other actions seeking enforcement or implementation of the provisions of this Plan or the Confirmation Order or pending appeals of Orders entered in the Chapter 11 Cases. On the Effective Date, there shall be formed a Post-Effective Date Committee with its duties limited to the oversight of certain actions of the Reorganized Debtors, which actions shall remain the sole responsibility of the Reorganized Debtors, including: (a) overseeing the General Unsecured Claims' reconciliation and settlement process conducted by or on behalf of the Reorganized Debtors pursuant to the Settlement Procedures Order; (b) overseeing (i) the establishment (including the determination of the amount of New Common Stock to be withheld) and (ii) the maintenance of the Distribution Reserve; (c) overseeing the distributions to the holders of General Unsecured Claims under this Plan; (d) appearing before and being heard by the Bankruptcy Court and other Courts of competent jurisdiction in connection with the above limited duties; and (e) such other matters as may be agreed upon between the Reorganized Debtors and the Post-Effective Date Committee or specified in this Plan. The Post-Effective Date Committee shall consist of not less than three nor

more than five members to be appointed by the Creditors' Committee and may adopt by-laws governing its conduct. For so long as the claims reconciliation process shall continue, the Reorganized Debtors shall make regular reports to the Post-Effective Date Committee as and when the Reorganized Debtors and the Post-Effective Date Committee may reasonably agree upon. The Post-Effective Date Committee may employ, without further order of the Court, professionals to assist it in carrying out its duties as limited above, including any professionals retained in these Reorganization Cases, and the Reorganized Debtors shall pay the reasonable costs and expenses of the Post-Effective Date Committee, including reasonable professional fees, in the ordinary course without further order of the Court. In the event that, on the Effective Date, an objection to any Claim by the Creditors Committee is pending, the Post-Effective Date Committee shall have the right to continue prosecution of such objection.

38. <u>Government Penalty Claims</u>. Government Claim No. 259, Claim No. 393, Claim No. 1041, Claim No. 1094, Claim No. 6210, Claim No. 6692, Claim No. 7507, Claim No. 8048-8059, Claim No. 8361, Claim Nos. 9273-9284 and Claim No. 11395 shall not be automatically deemed to be Subordinated Claims as defined in the Plan. The Debtors will seek subordination of such claims upon further application to the Bankruptcy Court or as agreed between the parties.

39. <u>Trust Fund Claims</u>. The rights of the United States to payments of funds collected and required to be held in trust for the benefit of the United States pursuant to federal law by the Debtors or Reorganized Debtors or their agents, either before or after the Commencement Date, shall not be affected by the Plan or this Confirmation Order. The Debtors will pay undisputed trust fund claims of the United States in full in cash in the ordinary course of business.

40. <u>Aircraft Secured Claims</u>.  The Plan provides for the reinstatement of the Consolidated Debtors' obligations with respect to the Aircraft Secured Claims in Classes 1B-1, 1B-2, and 1B-3 and for the assumption of certain aircraft leases, such that each such Aircraft Secured Claim and each assumed aircraft lease is not impaired in accordance with the requirements of section 1124 of the Bankruptcy Code.  Nothing in the Plan is intended to, nor shall it be deemed to limit, the applicable Consolidated Debtors' or Reorganized Debtors' obligations upon reinstatement in accordance with section 1124 of the Bankruptcy Code or upon assumption under section 365 of the Bankruptcy Code, as applicable, including the entitlement, if any, of such holder to the benefits of section 1110 of the Bankruptcy Code.

41. <u>Insurance Agreements</u>.  Nothing in the Plan or this Confirmation Order shall be deemed to be, or interpreted as, an enjoinment of any of Broadspire Services, Inc., Continental Casualty Company and its American insurance affiliates, or Lumbermens Mutual Casualty Company and its American insurance affiliates (such parties, collectively, the "Insurers"), from administering their duties and obligations under the terms of the respective insurance agreements executed between the Debtors and such Insurers, all such terms being assumed consistent with Section 8.10 of the Plan and/or as agreed between the parties.

42. <u>Multnomah County</u>.  Multnomah County, Oregon shall retain its liens upon real and personal property of Northwest Airlines, until its Allowed Claim has been paid in full.

43. <u>Nonoccurrence of Effective Date</u>.  In the event that the Effective Date does not occur, then (i) the Plan, (ii) assumption or rejection of executory contracts or unexpired leases pursuant to the Plan, (iii) any document or agreement executed pursuant to the Plan, and (iv) any actions, releases, waivers, or injunctions authorized by this Confirmation Order or any order in aid of consummation of the Plan shall be deemed null and void.  In such event, nothing contained in this Confirmation Order, any order in aid of consummation of the Plan, or the Plan,

and no acts taken in preparation for consummation of the Plan, (a) shall be deemed to constitute a waiver or release of any Claims or Equity Interests by or against the Debtors or any other persons or entities, to prejudice in any manner the rights of the Debtors or any person or entity in any further proceedings involving the Debtors or otherwise, or to constitute an admission of any sort by the Debtors or any other persons or entities as to any issue, or (b) shall be construed as a finding of fact or conclusion of law in respect thereof.

44. <u>Notice of Entry of Confirmation Order and Effective Date</u>. Pursuant to Bankruptcy Rules 2002(f), 2002(k) and 3020(c), on or before the tenth (10th) Business Day following the Effective Date, the Debtors shall electronically file with the Court and serve notice of entry of this Confirmation Order and occurrence of the Effective Date by causing notice of entry of the Confirmation Order and occurrence of the Effective Date in substantially the same form as attached hereto as Exhibit "H" (the "Notice of Confirmation and Effective Date"), with such changes as the Court may require, to be delivered on all holders of Claims and Equity Interests, all indenture trustees, the United States Trustee for the Southern District of New York and the attorneys for the Creditors Committee and all statutory committees by email or first-Class mail, postage prepaid, and on the parties identified in the Master Service List as defined in the Notice Order by email or first-class mail, postage prepaid. The Debtors also shall cause the Notice of Confirmation and Effective Date to be published as promptly as practicable after the Effective Date once in each of *The New York Times* (National Edition), *The Wall Street Journal* (National Edition), and *USA Today*, and shall post the Notice of Confirmation and Effective Date on the Debtors' website at <u>www.nwa-restructuring.com/</u>. The notice described herein is adequate under the particular circumstances and no other or further notice is necessary.

45. <u>Authorization to File Conformed Plan</u>. The Debtors are authorized to file a conformed Plan, dated on the date hereof, that incorporates the amendments to the Plan within thirty (30) days of the entry of this Confirmation Order.

46. <u>Applicable Non-Bankruptcy Law</u>. Pursuant to sections 1123(a) and 1142(a) of the Bankruptcy Code and the provisions of this Confirmation Order, the Plan, the Plan Supplements, and the Plan Documents shall apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy law.

47. <u>Final Order</u>. This Confirmation Order is a final order and the period in which an appeal must be filed shall commence upon the entry hereof.

48. <u>Severability</u>. Each term and provision of the Plan, as it may have been altered or interpreted by the Bankruptcy Court in accordance with Section 13.11 of the Plan, is valid and enforceable pursuant to its terms.

49. <u>Conflicts Between Order and Plan</u>. To the extent of any inconsistency between the provisions of the Plan and this Confirmation Order, the terms and conditions contained in this Confirmation Order shall govern. The provisions of this Confirmation Order are integrated with each other and are nonseverable and mutually dependent unless expressly stated by further order of this Bankruptcy Court.

Dated:    May 18, 2007
          New York, New York


                              _/s/ Allan L. Gropper_____
                              UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT EIGHT
## U S B C - Southern District of New York
## Case No. 05-17930
### Notice of (I) Entry of Order Confirming Debtors' First Amended Joint and Consolidated Plan of Reorganization

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | x | Chapter 11 |
|---|---|---|
| In re: | : | Case No. 05-17930 (ALG) |
| | : | Jointly Administered |
| NORTHWEST AIRLINES CORPORATION, | : | |
| NWA FUEL SERVICES CORPORATION, | | |
| NORTHWEST AIRLINES HOLDINGS CORPORATION, | : | |
| NWA INC., | | |
| NORTHWEST AEROSPACE TRAINING CORPORATION, | : | |
| NORTHWEST AIRLINES, INC., | | |
| NWA AIRCRAFT FINANCE, INC., | : | |
| MLT INC., | | |
| COMPASS AIRLINES, INC. F/K/A NORTHWEST AIRLINES CARGO, INC., | : | |
| NWA RETAIL SALES INC., | | |
| MONTANA ENTERPRISES, INC., | : | |
| AIRCRAFT FOREIGN SALES, INC., | | |
| NW RED BARON LLC, AND | : | |
| NWA WORLDCLUB, INC. | | |
| | : | |
| Debtors. | : | |
| | x | |

**NOTICE OF (I) ENTRY OF ORDER CONFIRMING DEBTORS'
FIRST AMENDED JOINT AND CONSOLIDATED PLAN OF REORGANIZATION
UNDER CHAPTER 11 OF THE BANKRUPTCY CODE; AND (II) OCCURRENCE OF EFFECTIVE DATE**

**TO ALL CREDITORS, EQUITY INTEREST HOLDERS AND PARTIES IN INTEREST, PLEASE TAKE NOTICE
THAT:**

      1.   *Confirmation of the Plan.* On May 18, 2007, the United States Bankruptcy Court for the Southern District of New
York (the "Bankruptcy Court") entered an order [Docket No. 6944] (the "Confirmation Order") confirming the Debtors' First
Amended Joint and Consolidated Plan of Reorganization Under Chapter 11 of the Bankruptcy Code, dated May 15, 2007 ( the
"Plan") filed by Northwest Airlines Corporation ("NWA Corp.") and the above-captioned debtors, as debtors and debtors in
possession in these chapter 11 cases (collectively, the "Debtors"). Unless otherwise defined herein, capitalized terms used herein shall
have the meanings ascribed to such terms in the Plan or the Confirmation Order, as applicable. The Plan and the Confirmation Order
are available by written request to the Debtors' balloting agent, Bankruptcy Services LLC at FDR Station, PO Box 5014, New York,
NY 10150-5014. Parties with a PACER password may view such documents by accessing the Bankruptcy Court's Electronic Case
Filing System, which can be found at http://www.nysb.uscourts.gov/, the official website for the Bankruptcy Court. Parties may
also view such documents by accessing the Debtors' restructuring website at http://www.nwa-restructuring.com/, which does not
require a password.

      2.   *Effective Date.* On [May 31], 2007, the Effective Date of the Plan occurred.

      3.   *Discharge.* Pursuant to Section 11.2 of the Plan, except as otherwise provided in the Plan or the Confirmation
Order, the rights afforded in the Plan and the payments and distributions to be made under the Plan shall be in complete
satisfaction of and shall discharge and terminate all Equity Interests in NWA Corp. and all existing debts and Claims, of any
kind, nature or description whatsoever against or in the Debtors or any of their assets or properties to the fullest extent permitted
by section 1141 of the Bankruptcy Code.

   **4.  *Injunction*.** The Plan contains an injunction that provides, among other things, that any holder of any Claim or Equity Interest and any other parties in interest, along with their respective present or former employees, agents, officers, directors or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.

Dated:        New York, New York
              _____, 2007

                                        CADWALADER, WICKERSHAM & TAFT LLP


                                        _____
                                        Bruce R. Zirinsky (BZ 2990)
                                        Gregory M. Petrick (GP 2175)
                                        One World Financial Center
                                        New York, New York  10281
                                        Telephone:  (212) 504-6000
                                        Facsimile:  (212) 504-6666

                                        Attorneys for Debtors and
                                        Debtors In Possession